UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY as successor in interest to GULF INSURANCE COMPANY,<br><br>    Plaintiff,<br>v.<br><br>EXCALIBUR REINSURANCE CORPORATION f/k/a PMA CAPITAL INSURANCE COMPANY,<br><br>    Defendant. | 3:11 - CV- 1209 (CSH) |

**RULING ON PLAINTIFF'S MOTION TO AMEND ITS COMPLAINT**

**HAIGHT, Senior District Judge:**

This diversity action presents a not infrequently encountered situation in the insurance industry. A reinsurer refuses to pay to an insurer amounts claimed to be owing under a contract or treaty of reinsurance. The insurer sues the reinsurer to recover them. In the case at bar, the insurer is Plaintiff The Travelers Indemnity Company, as successor in interest to Gulf Insurance Company ("Travelers"). The reinsurer is Excalibur Reinsurance Corporation, formerly known as PMA Capital Insurance Company ("Excalibur").

Travelers filed its original complaint [Doc. 1] against Excalibur on August 1, 2011. Excalibur answered the complaint and asserted affirmative defenses [Doc. 15] on September 9, 2011. Discovery has begun but not yet completed; motions concerning discovery issues are pending before the Court and are not addressed in this Ruling. The case is not on the Court's trial calendar.

Travelers now moves [Notice of Motion, Doc. 56] to amend its complaint in the form attached to its motion as the Proposed Amended Complaint ("PAC") [Doc. 56-1]. Excalibur opposes the motion. This Ruling resolves it.

## I. BACKGROUND

Travelers' original complaint against Excalibur alleges that at the pertinent times its predecessor in interest, Gulf, an insurance company, issued Errors and Omissions insurance policies to a variety of businesses. Gulf purchased a reinsurance policy entitled "Errors and Omissions Liability Cessions Treaty" (the "E & O Treaty"). Excalibur, then known as PMA Capital, was one of the reinsurers who subscribed to the E & O Treaty for the periods April 1, 1998 to April 1, 1999 and April 1, 1999 to April 1, 2000.

Gulf and its affiliates issued primary and excess Errors and Omissions policies to a certain insurance and reinsurance Broker, not named in this record. Two insurance companies made claims against the Broker for losses allegedly sustained from insurance transactions involving the Broker. Travelers, as successor to Gulf, entered into settlement agreements whereby Travelers paid the Broker negotiated amounts from the Errors and Omissions policies issued to the Broker for the years July1 - June 3, 1999 and July 1, 1999 - June 30, 2000. Travelers then claimed from Excalibur its portion of the reinsurance covering the underlying claims. The original complaint alleges that Excalibur has wrongfully refused to pay the net amount of $1,573,189.58 due to Travelers under the E & O Treaty, and asserts one count: for breach of contract, namely, the E & O Treaty.

Travelers' original complaint against Excalibur is an uncomplicated pleading. It simply alleges the existence of the reinsurance treaty, amounts owing under its terms, demand and failure to pay, and breach. By its present motion, Travelers seeks leave to file the PAC, which is a

somewhat more complex pleading. It reiterates the count for breach of contract, and adds two new counts: the second, for account stated; and the third, for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq*.

In its brief supporting its motion to amend the complaint, Travelers says that these additional counts are based on two relatively recent factual sources. The first is a deposition taken on May 29, 2012 of Carol Barnhardt, an Excalibur employee, during which "she revealed material facts not previously known to Travelers." [Doc. 56-2] at 2. The second is "a recent telephone call" between a Travelers employee (later identified as a Ms. Robles) and "Excalibur's claims manager, Diane Ferro." *Id*. at 3. Travelers filed this motion to amend on July 9, 2012.

Excalibur opposes Travelers' motion to amend the complaint, principally upon the grounds that the motion is untimely, and that on the facts as Excalibur perceives them, the two causes of action Travelers seeks to assert are not viable as a matter of law, so that the amendment would be futile.

## II. DISCUSSION

While this is Travelers' first amendment of its complaint, the timing is such that it may not do so as a matter of course. Instead, the question is governed by Rule 15(a)(2), Fed. R. Civ. P., which provides that in the circumstances of the case at bar "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Excalibur, the opposing party, does not consent to the amendment, so the Rule requires Travelers to obtain leave of court to do so. Whether leave should be granted is entrusted to the district court's discretion, which cannot be regarded as entirely unfettered, since the last sentence of Rule 15(a)(2) contains a pointed instruction, reflective of the procedural rules' ultimate

objective that justice be done.

Notwithstanding the favor with which the Rule regards motions for leave to amend pleadings, leave is not granted uncritically or whenever sought. "[D]espite the considerable latitude which Rule 15(a) grants in terms of allowing amendments, leave to amend should not be granted automatically or reflexively." *Oneida Indian Nation of N.Y. State v. County of Oneida*, *N.Y.*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000). The Second Circuit has cautioned recently that "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citations omitted). In *Burch* the Second Circuit cited and quoted the Supreme Court's seminal decision in *Foman v. Davis*, 371 U.S. 178 (1962), which identified those particular reasons for denying leave to amend, but immediately followed them with this cautionary note: "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." 371 U.S. at 182.

I consider in turn Excalibur's two principal bases for denying Travelers leave to amend: untimeliness, and insufficiency in law.

A.     **Timeliness of Travelers' Motion to Amend the Complaint**

There is no substance to Excalibur's objection that Travelers' motion to amend its complaint is untimely. Excalibur neither asserts specifically nor suggests generally that it has been prejudiced by Travelers not moving to amend earlier. Nor could Excalibur plausibly do so: the case, while

energetically litigated by experienced insurance-law counsel, is in its early stages; discovery is in progress; trial is neither scheduled nor imminent. Excalibur has time, presently unlimited, and the full resources of discovery to combat the two additional causes of action Travelers seeks to assert in the PAC.

Travelers says that the May 29, 2012 deposition of Excalibur's Carol Barnhardt revealed facts new to Travelers which led to its motion to amend the complaint, filed on July 9. That is prompt action on Travelers' part, at least as the practice of law measures time. Excalibur contends that the facts underlying the two new causes of action were known to Travelers, or could have been, much earlier. That is a doubtful proposition, but it need not be further pursued in the absence of any prejudice to Excalibur caused by any delay of Travelers. "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation and internal quotation marks omitted). Undue prejudice arises "where an amendment [comes] on the eve of trial and would result in new problems of proof." *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981) (reversing denial of leave to amend promptly sought after learning new facts, where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery.").

As an additional support for its untimeliness objection, Excalibur relies upon a Scheduling Order [Doc. 19] the Court entered on October 14, 2011, following the parties' Rule 26(f) conference. That order began with the provision: "Plaintiff may file motions to add additional parties *and to amend the complaint* by October 20, 2011" (emphasis added). Plaintiff filed the present motion to

5

amend the complaint on the later date of July 9, 2012. There is less to Excalibur's argument than meets the eye. This scheduling order was entered at the beginning of the case; its subsequent provisions did not require completion of discovery until September 14, *2012*. Travelers says it did not learn of the facts underlying its new causes of action until discovery resulted in the Barnhardt deposition in May 2012, and the submitted pages of that deposition support the assertion. The parties necessarily recognized that discovery might give rise to motions to add additional parties or amend the complaint to allege additional claims. That is what occurred in this case.

In the circumstances of the case at bar, I conclude that it would be an abuse of this Court's discretion to deny Travelers leave to amend the complaint on the ground that its motion to do so was not timely made. I reject that objection by Excalibur.

**B.    Legal Sufficiency of the Two Additional Causes of Action as Pleaded in the Proposed Amended Complaint**

  **1.  *Standard of Review***

A recognized reason for denying leave to amend a pleading is "futility." A proposed pleading is futile if it is legally insufficient. Thus it is frequently held that an "amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of North Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

Use of a Rule 12(b)(6) dismissal as a practical yardstick for futility of amendment under Rule 15(a)(2) renders applicable to Rule 15(a)(2) analysis recent Supreme Court decisions interpreting Rule 12(b)(6), the most recent being *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Iqbal*, the Court held at 556 U.S. at 679:

6

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Following *Iqbal*, the Second Circuit has embraced the concept of a complaint being *legally sufficient* if it is *plausible*. *See, e.g., Absolute Activist Value Master Fund, Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012): "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citing and quoting *Iqbal*). *Ficeto* is instructive in the case at bar because the plaintiff in that case asked the Second Circuit to grant it leave to amend its complaint if the court affirmed the district court's dismissal of the original complaint, alleging violations of federal securities laws. The court of appeals did affirm that dismissal, concluding that the complaint failed to state claims under the securities laws "because it does not adequately allege the existence of domestic securities transactions." 677 F.3d at 70. The Second Circuit then granted plaintiff "leave to amend their complaint in order to plead additional factual allegations to support their claim that the transactions took place in the United States." *Id*. at 71. The Second Circuit clearly applies the *Iqbal* touchstone of plausibility to claims asserted in both original complaints and amended complaints filed by leave of court; nor is there a discernible basis for applying different standards.

### 2. *Travelers' Claim for an Account Stated*

Turning to the two additional claims Travelers pleads in the proposed amended complaint, the Second Count is for "account stated." In that count, the PAC alleges at ¶¶ 65-67 that "[t]he reinsurance claims, billings and credits" pleaded in earlier paragraphs "constituted statements of the

amount Excalibur owed Travelers under the E & O Treaty for reinsurance claims arising out of Travelers' insurance of the Broker"; "Excalibur failed to question or object to Travelers' statements within a reasonable time"; and "[t]he reinsurance claims, billings and credits" pleaded earlier "constitute an account stated in the amount of $1,573,189.58, exclusive of interest and costs."

In earlier paragraphs, the PAC describes the several unpaid billings it includes in that total amount stated. The first is "the April 2010 Claim." Travelers alleges in the PAC that on April 19, 2010, it "submitted a reinsurance claim to Excalibur under the E & O Treaty"; Travelers requested Excalibur to pay the claim by May 3, 2010; Excalibur did not pay the April 2010 Claim by May 3, 2010, and has not paid it to date; and Excalibur did not object to or question the April 2010 Claim at any time between April 19, 2010 and May 3, 2010. PAC, ¶¶ 30-37. Comparable allegations are made with respect to subsequent claims for payment under the E & O Treaty.

Excalibur's brief in opposition to granting leave to file the proposed amended complaint asserts that additional facts exist which negate any recovery based upon an account stated. However, factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny. In deciding whether to dismiss a complaint under Rule 12(b)(6), or to grant leave to file an amended complaint under Rule 15(a)(2), the Court accepts the truth of well-pleaded factual allegations, and considers whether they state a claim that is plausible on its face. Putting aside conclusions, the facts alleged in Travelers' PAC state a plausible claim for an account stated.

A claim's plausibility also depends upon its viability as a matter of law. In the case at bar, Excalibur contends that Travelers cannot state a claim for an account stated because Travelers "does not even attempt to allege that Excalibur made an explicit promise to pay a 'sum certain' owed by Excalibur," with the result that "Travelers has not and cannot allege facts in good faith to show that

8

the claim is an agreed sum certain which Excalibur promised to pay," and "[a]ccordingly, Travelers's claim for account stated would not withstand a motion to dismiss and thus is futile." Brief [Doc. 57] at 8, 11. This argument takes too narrow a view of the legal concept of an account stated. In *In re Rockefeller Center Properties and RCP Associates*, No. 00 CIV. 647 (LAP), 2002 WL 22051 (S.D.N.Y. Jan. 8, 2002), Judge Preska said:

> Under federal and New York law, an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due. The promise may be either express or implied but it must be founded on previous transactions creating the relationship of debtor and creditor.
>
> An account stated may be implied if the party receiving the statement keeps it for a reasonable time without objecting to or questioning the correctness of the account. Additionally, an implied account stated may arise if the debtor makes a partial payment towards reducing the balance of the account.
>
> Whether a statement has been kept long enough to create an implied account stated is ordinarily a question of fact; such an inquiry, however, becomes a question of law when only one inference is rationally possible.

2002 WL 22051, at *4 (citations, internal quotation marks, and ellipses omitted). "Because an account stated is not conclusive as a settlement if mistake is shown to impeach it, an account stated can always be opened upon proof of mistake or fraud." *American Home Assur. Co. v. Instituto Nacional de Reaseguros*, No. 88 Civ. 0917 (CSH), 1991 WL 4461, at *3 (S.D.N.Y. Jan. 10, 1991), (citations and internal quotation marks omitted).[1]

In the case at bar, Travelers' proposed amended complaint adequately pleads a plausible claim for an *implied* – not an express – amount stated. Such claims are enforceable if proven. The

---

[1] New York cases are cited in text because Travelers says without contradiction that "the relevant reinsurance contracts are governed by New York law." Reply Brief [Doc. 63] at 3 n.1.

contracts and treaty of reinsurance created the relationship of Excalibur as debtor and Travelers as creditor. Travelers submitted to Excalibur claims for specific amounts it calculated Excalibur was obligated to pay under these contracts and treaty. Excalibur received these claims, held them, and did not pay them. I am mindful of Excalibur's contention that the early reservations it expressed and questions it posed about the manner in which Travelers allocated the underlying claims against the Broker among the several reinsurance contracts preclude any finding of an account stated.[2] Excalibur is of course entitled to establish such propositions in discovery and advance them in a summary judgment motion or at trial. But such propositions go to the merits, and cannot be determinative of Travelers' right to assert in an amended complaint a claim that is on its face factually plausible and legally viable. Travelers argues correctly that it is not required to prove a claim before it can plead it.

The PAC combines a claim at law for breach of contract (First Count) with a claim for account stated, sounding in quasi-contract with equitable overtones akin to unjust enrichment. There is no obstacle, in these modern and enlightened procedural days, to pleading in the alternative in such a manner.

### 3. *Travelers' Claim for Violations of CUTPA*

The same sort of considerations apply to the second claim Travelers seeks to assert in the PAC, Third Count: violations by Excalibur of principles of fairness and public policy enacted into the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. §§ 42-110a *et seq*. Travelers says that it bases this claim upon information recently obtained during discovery and informal discussions

---

[2] Excalibur's brief in opposition to the amendment [Doc. 57] is confined to a discussion of express statements of account, but its contentions would seem to be equally applicable to implied statements, that being the basis of the claim Travelers seeks to assert in the PAC.

between employees of the parties.

Specifically, the PAC [Doc. 1] alleges in ¶¶ 69-71 that Excalibur "has a general business practice of refraining from even beginning its review of reinsurance claims until they are at least 180 days old," even though the reinsurance policies in question expressly required payment within a shorter time; "identifying every reinsurance cash call claim in its computer system as 'disputed,' irrespective of whether Excalibur has a meritorious basis for disputing the claim;" and, even when Excalibur "deems a reinsurance claim to be payable," withholding payment until after a quarter-of-year period has ended, notwithstanding provisions in reinsurance contracts "requiring payment within a shorter period of time." These general business practices, the PAC alleges at ¶ 77, Excalibur employed "with respect to reinsurance claims submitted by Travelers" pursuant to the reinsurance contracts in suit.

Travelers contends that Excalibur intends by these practices to take advantage of "the float," which is to say, hold on to monies as long as possible, even in derogation of the letter and spirit of contractual obligations owing to others. This interpretation is entirely plausible. It is equally plausible to think that finders of fact at a trial would conclude that such practices, if proven, were cynical, self-serving, and constitute substantial aggravating circumstances of a magnitude sufficient to constitute a violation of CUTPA.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Construing CUTPA, the Second Circuit said in *Boulevard Associates v. Sovereign Hotels, Inc.,* 72 F.3d 1029 (2d Cir. 1995): "A simple breach of contract, even if intentional, does not amount to a violation of the Act; a [claimant] must show substantial aggravating circumstances attending

the breach to recover under the Act." 72 F.3d at 1038-39 (internal quotations and citation omitted). Applying that construction to the facts in the case, the Second Circuit went on to say: "Because a breach of contract standing alone does not offend public policy, to invoke CUTPA, Boulevard was required to show that the defendants engaged in some conduct that was more offensive than simply not paying the rent." *Id*. In the case at bar, Travelers' PAC plausibly alleges that Excalibur's business practices of arbitrary and contract-violative delays in the evaluation of reinsurance claims, and in the payment of them even when approved, is "more offensive than simply not paying" a reinsurance claim when first presented.

In short, Travelers' proposed amended complaint states a plausible claim against Excalibur for violations of CUTPA. The pleading satisfies the requirements of *Iqbal* and its progeny, and leave will be granted to file it. Whether Travelers can prove the facts upon which this claim is based, including what Excalibur's Pierro is alleged to have said on the telephone to Travelers' Robles, is for another day. Excalibur's objection, that there is an insufficient nexus pleaded between the business practices alleged in the Third Count and the damages caused by the particular breaches of contract alleged in the First Count, is entirely unpersuasive. So precise a nexus is not required by the Act or any case construing it; and such connection as is required between the two counts is satisfied by the allegation that Excalibur applied and followed the business practices described in the Third Count to its conduct in paying reinsurance claims, in breach of contract as alleged in the First Count. The damage such breaches of contract inflicted upon Travelers is the wrongful deprivation of Travelers' use of monies contractually owing to it, the inevitable and inescapable consequence of Excalibur's business practices alleged as violative of CUTPA, which had the perverse and offensive effect of letting Excalibur use those same monies that Travelers should have

been using.

**C.     Additional Issue**

Lastly, Excalibur complains that "Travelers seeks leave to amend its complaint solely to compel Excalibur to file a pleading to trigger the Pre-Answer Security Statute." Brief [Doc. 57] at 18. Travelers has professed qualms about Excalibur's financial solvency, and filed a motion for a statutory Prejudgment Remedy ("PJR"), which Excalibur opposes.

That motion for a PJR is pending. In its brief on the present motion to amend, Excalibur stresses that Travelers' main brief in support of this motion to amend [Doc. 56-2] says at 6: "A hearing on this [PJR] application has not been scheduled. If Travelers is permitted to file its proposed Amended Complaint, however, there will be no need for a prejudgment remedy hearing, as there is a simpler, more efficient mechanism that Travelers intends to use to secure the judgment Travelers expects." Travelers has in mind a Connecticut statute requiring a defendant non-licensed insurer(such as Excalibur has recently become) to post security sufficient to satisfy a final judgment for a plaintiff before the defendant can file a pleading in response to a complaint, a requirement that Travelers believes would be would be triggered in the case at bar by the filing of an amended complaint.

With the benefit of hindsight, counsel for Travelers may regret its candor in having revealed that stratagem in its brief, since it flung open the door to the indignation counsel for Excalibur now profess. However, on the core question of whether the Court should grant Travelers leave to amend its complaint, this issue comes to nothing. Excalibur's brief does not flesh out its argument. Presumably, its contentions are that Travelers' real motive in seeking leave to amend the complaint, now revealed for all to see, is an exercise in bad faith, resulting in undue and unfair prejudice to

Excalibur: both are recognized grounds for denying leave to amend a pleading. There is no substance to such contentions. Travelers is entitled to add to its complaint claims for which plausible bases in fact were recently discovered and are viable in law. To do so is not bad faith; it is a proper and professional exercise, in legitimate furtherance of a civil plaintiff's always-present ultimate purpose: to transfer money from a defendant's pocket into its own. Excalibur may not welcome the consequences of the filing of an amended complaint; one may even agree that those consequences are prejudicial to Excalibur, just as being sued in the first place is at some level prejudicial. But this is not unfair or undue prejudice, as those phrases are used in Rule 15(a)(2) analysis. The Rule ends with the salutary direction that the court "should freely give leave" to amend; and the circumstances cited by Excalibur furnish no basis for denying Travelers leave to amend its complaint in this case.

### III.  CONCLUSION

For the foregoing reasons, the Motion of Plaintiff The Travelers Indemnity Company to file and serve an amended complaint [Doc. 56] in the form attached to the Motion is GRANTED.

Plaintiff is directed to file its Amended Complaint on or before February 15, 2013. Defendant is directed to file its responsive pleading in accordance with the Federal Rules of Civil Procedure.

It is SO ORDERED.

Dated: New Haven, Connecticut
February 1, 2013

/s/Charles S. Haight, Jr.
Charles S. Haight, Jr.
Senior United States District Judge