## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT

THE TRAVELERS INDEMNITY
COMPANY as successor in interest to GULF
INSURANCE COMPANY,

              Plaintiff,

v.

EXCALIBUR REINSURANCE
CORPORATION f/k/a CAPITAL
INSURANCE COMPANY,

              Defendant.

3:11 - CV- 1209 (CSH)

AUGUST 5, 2013

## RULING ON MOTIONS TO SEAL AND MOTIONS TO DESIGNATE CONFIDENTIAL DISCOVERY MATERIALS

**HAIGHT, Senior District Judge:**

## I. BACKGROUND

Plaintiff, the Travelers Indemnity Company ("Travelers") brings this contract action as successor in interest to Gulf Insurance Company, which entered into a reinsurance contract with defendant Excalibur Reinsurance Corporation ("Excalibur"), formerly known as PMA Capital Insurance Company. This reinsurance case arises out of several "errors and omissions" policies Travelers issued to an insurance and reinsurance broker. The polices had annual periods extending from 1997 to 2001. A number of the broker's insurance company clients brought claims against the broker for losses allegedly sustained due to "reinsurance spirals."[1] The broker sought coverage for

---

[1] A reinsurance spiral may occur when a reinsurer buys reinsurance protection from other reinsurers and "unknowingly gets some of its own business (and therefore its own liabilities) back."

the clients' claims from Travelers, from certain Travelers' insurance company affiliates (the "Affiliates"), and from unaffiliated insurance companies (the "Underwriters").  In so doing, the broker shared confidential documents with Travelers, including privileged communications with its legal counsel as well as details of settlement negotiations with its clients.  Moreover, the Affiliates and Underwriters shared confidential documents with Travelers, including communications with their own attorneys, Mayer, Brown, Rowe and Maw ("Mayer Brown").[2]

In February 2010 Travelers and the Affiliates reached a confidential settlement with the broker.  Because the Underwriters did not settle at that time, Travelers represents that it does not know whether the broker's coverage claims against the Underwriters remain active.  In any event, Travelers sought to recover a portion of its share of the settlement from one of its reinsurers, defendant Excalibur.  In response to Excalibur's failure to pay the bulk of Travelers' claims, Travelers filed the present action with this Court on August 1, 2011.  Specifically, Travelers has alleged that "Excalibur has failed and refused to pay $1,573,189.58 worth of valid reinsurance claims under the

Wikipedia, Reinsurance, http://en.wikipedia.org/wiki/Reinsurance. "In the 1980s the London market was badly affected by the creation of reinsurance spirals. This resulted in the same loss going around the market thereby artificially inflating market loss figures of big claims." *Id.*  This London Market Excess of Loss spiral ("LMX spiral") was eventually "stopped by excluding retrocessional business from reinsurance covers protecting direct insurance accounts." *Id.*

[2] According to Travelers, the Affiliates and the Underwriters hired a single law firm to protect the interests of the primary layer insurers: Mayer, Brown, Rowe and Maw, an international law firm which officially changed its name to "Mayer Brown" on September 1, 2007.  This firm provided legal advice to the Affiliates and the Underwriters concerning the broker's coverage claims and participated in settlement negotiations with the broker on their behalf.  As primary insurers, the Affiliates and the Underwriters updated the excess insurers on the status of the underlying claims from time to time.  Doc. 77-1, p. 3.  Eventually, Travelers and the Affiliates entered into several settlements to resolve the broker's coverage claims in the primary and excess layers.    A final confidential settlement agreement between the broker, on one hand, and Travelers and its Affiliates, on the other hand, was entered into on February 17, 2010.  *Id*.

2

contract, thereby breaching it." Doc. 1, p. 1.

On February 29, 2012, the parties jointly requested the Court's approval of a proffered "Stipulated Protective Order" (herein "SPO"). Doc. 24-1. The Court reviewed, approved, and entered the parties' protective order, as written, on March 1, 2012. Doc. 25. Under that order, "Confidential Discovery Material" is defined as material that "a party believes, in good faith, includes personal information or confidential, commercial, proprietary business information or non-public financial data, or implicates the commercial, proprietary or reputational interests of third parties." Doc. 24-1, ¶ 1. If a party decides to file "Confidential Discovery Material" with the Court, pursuant to the protective order, that party shall make the filing "under seal in accordance with the procedure set forth in the District of Connecticut Local Rule 5(e) and accompanied by a motion to seal from the requesting party." *Id.*, ¶ 11.

On March 6, 2012, Travelers applied for a prejudgment remedy [Doc. 26].[3]  Excalibur opposed that application, including with its opposition papers several documents that named the broker, contained legal advice obtained by the broker, and described details of settlement discussions between Travelers and the broker. As the case record reflects, Travelers moved to seal such documents [Doc. 40] and the Court granted the motion, denying it only to the extent that the Court required further specific redactions of particular documents [Doc. 48, p. 21-23].

---

[3] In seeking a prejudgment remedy, Travelers asserted that "there is probable cause that a judgment in the amount sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account all recoveries made to date, any known defenses, counterclaims or set-offs, will be rendered in this matter in favor of Travelers." Doc. 26, ¶ 3. Travelers requests an order to secure the sum of $1,573,189.58 by attaching the real or personal property of Excalibur within the state of Connecticut and/or garnishing the real or personal property of Excalibur in the custody or control of third persons, including debts owed to Excalibur by natural persons and corporations, within the state of Connecticut. *Id.*, ¶ 4 (a), (b).

3

On July 9, 2012, Travelers moved for leave to amend its complaint [Doc. 56].  In opposing Travelers' motion,  Excalibur submitted opposition papers which included a declaration from Angela Aloisio [Doc. 59],  an employee of Armour Risk Management, Inc.,"the entity that manages the business of Excalibur."[4]  Doc. 59, ¶ 1.  Attached to Aloisio's declaration were  four documents that Travelers designated as "Confidential Discovery Material" pursuant to the terms of the SPO [Doc. 24-1].  Travelers contends that the "four documents invoke the same concerns as the earlier set of documents, and accordingly the Court should seal them" as well.  Doc. 62, p. 3.

## II.  <u>PENDING MOTIONS</u>

Pending before the Court are eight motions to seal and two motions to designate discovery materials as "confidential."  The motions to seal include the following: Doc. 45 (Travelers' Motion to Seal Portions of Excalibur's Motion to Compel [Doc. 42 & 43] and supporting exhibits [Doc. 44]); Doc. 52 (Travelers' Motion to Seal Portions of Exhibit 1 to Travelers' Opposition to Excalibur's Motion to Compel [Doc. 51-1]);  Doc. 58 (Excalibur's Motion to Seal Exhibits 1, 3, 4, & 7 to Declaration of Angela Aloisio); Doc. 61 (Travelers' Motion to Seal Exhibits 1, 3, 4 & 7 to Declaration of Angela Aloisio); Doc. 77 (Travelers' Motion to Seal Portions of Excalibur's Memorandum in Support of its Motion to Compel [Doc. 75] and exhibits attached to Declaration of Raymond S. Mastrangelo); Doc. 84 (Travelers' Motion to Seal Unredacted Memorandum of Law in Support of Motion for Pre-Pleading Security and Exhibit 1 to that Memorandum, an excerpt from Diane Ferro's deposition); Doc. 91 (Travelers' Motion to Seal Unredacted Memorandum of Law in

---

[4]   The Court granted Plaintiff's Motion for Leave to Amend Complaint [Doc. 56] on February 1, 2013. Doc. 73.  Travelers thereafter filed its Amended Complaint.  Doc. 85 ("Amended Complaint," filed 2/15/2013).

Opposition to Excalibur's Motion to Designate Discovery Material as Confidential and Exhibits 1 & 2 to that Memorandum); and Doc. 101 (Travelers' Motion to Seal Portions of February 26, 2013 Hearing Transcript).

Each party has also filed a motion to designate various discovery materials as "confidential" pursuant to the Court-approved SPO [Doc. 24-1 & 25].  *See* Doc. 74 & 80 (motions re confidential discovery materials filed by Excalibur and Travelers, respectively).

For the reasons set forth below, all of the foregoing motions to seal and motions to designate discovery materials as confidential will be granted.

## III.   DISCUSSION

### A.   Motions to Seal

#### 1.   Sealing in General

In two previous Rulings on the parties' motions to seal in this case, the Court has set forth the relevant law with respect to sealing.  *See* Doc.  38 & 48 (Rulings re: sealing, filed 4/13/2012 & 5/10/2012).  The Supreme Court and the Second Circuit have  recognized the public's right to access court records and proceedings, which is rooted in both the common law and the First Amendment. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–120 (2d Cir. 2006).[5]  Consequently, there is a strong presumption against sealing court records from public inspection.

The public's  right to access court documents is not, however,  absolute in that it may be

_____

[5]  *See also  Vassiliades v. Israely*,  714  F. Supp. 604, 605-06 (D. Conn. 1989)*; United States v. Gerena*, 703 F. Supp. 211, 212–13 (D. Conn.1988), *aff'd sub nom, United States v. Suarez*, 880 F.2d 626 (2d Cir. 1989).

surmounted by a party's showing that sealing will further other substantial interests, for example, a criminal defendant's right to a fair trial or a third party's privacy interests. *Matter of New York Times Co.*, 828 F.2d 110, 114-16 (2d Cir.1987), *cert. denied*, 485 U.S. 977 (1988). Thus, in limited circumstances and upon a showing of compelling need, the court may order certain records to be sealed. *Lugosch*, 435 F.3d at 123; *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 95-96 (2d Cir. 2004); *Suntoke v. PSEG Power Connecticut, LLC.*, No. 3:06-CV-01520 (JCH), 2007 WL 1455847, at *1 (D. Conn. May 16, 2007).

To be precise, court documents may be sealed if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986) ("*Press Enterprise II*") (quoting *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press–Enterprise I*")). *Accord New York Times Co.*, 828 F.2d at 116; *Hartford Courant Co.*, 380 F.3d at 95-96 (judicial records may be sealed only when and to the extent necessary to preserve higher values).[6] It thus follows that "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." *Video Software Dealers Assoc. v. Orion Pictures, Corp. (In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2d Cir.1994). *See also Sec. & Exch. Comm'n v. The Street.com*, 273 F.3d 222, 232 (2d Cir. 2001).

In this District, the Local Rules expressly dictate that the Court may seal a judicial document

---

[6]   Although the term "higher values" has not been comprehensively defined, courts have identified particular examples. *See, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006) (attorney-client privilege); *United States v. Aref*, 533 F.3d 72, 83 (2d Cir.2008) (national security); *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995) (law enforcement interests and the privacy of innocent third parties); *Pal v. New York Univ.*, No. 06 Civ. 5892(PAC)(FM), 2010 WL 2158283, at *1 (S.D.N.Y. May 27, 2010) (sensitive patient information).

only by an order which "shall include particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons." D. Conn. L. Civ. R. 5(e)(3).[7] "No document shall be sealed merely by stipulation of the parties." *Id.* Furthermore, the blanket sealing of an entire case is disfavored both under rule and case precedent. *See id.* 5(e)(2) ("Except as permitted or required by federal law, no civil case shall be sealed in its entirety."). *See also Crossman v. Astrue*, 714 F.Supp.2d 284, 290 (D. Conn. 2009) (denying plaintiff's request for "blanket order allowing [him] to file every document under seal").

With respect to documents, blanket sealing of *entire* documents or *all* documents within a case is generally disfavored. *See, e.g., Jadwalean Int'l Co. For Operations & Mgmt v. United Tech Corp. ,*3:09–CV–00018(JCH), 2009 WL 1064495, at *1 (D. Conn. April 17, 2009) (rejecting blanket sealing request because "a court must make that determination [of whether to seal] on the basis of a careful, document-by-document review of the *particular portions of the document* that a party

---

[7]Local Rule of Civil Procedure 5(e), captioned "Sealed Proceedings and Documents," provides at subsection 3, in relevant part:

> Every document used by parties moving for or opposing an adjudication by the Court, other than trial or hearing exhibits, shall be filed with the Court. No judicial document shall be filed under seal, except upon entry of an order of the Court either acting *sua sponte* or specifically granting a request to seal that document. Any such order sealing a judicial document shall include *particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons.* A statute mandating or permitting the non-disclosure of a class of documents (*e.g.*, personnel files, health care records, or records of administrative proceedings) provides sufficient authority to support an order sealing such documents. . . . No document shall be sealed merely by stipulation of the parties. *A confidentiality order or protective order entered by the Court to govern discovery shall not qualify as an order to seal documents for purposes of this rule.* Any document filed under seal in the absence of a Court order to seal it is subject to unsealing without prior notice to the parties.

D. Conn. L. Civ. R. 5(e)(3) (emphasis added).

wishes to be kept under seal and after considering whether the requested order is no broader than necessary to serve the interests that require protection.") (emphasis added); *Doctor's Assoc. Inc. v. QIP Holders LLC*, No. 3:06-CV-1710 (VLB), 2007 WL 2782516, at *1 (D. Conn. Sept. 24, 2007) (denying request by parties for blanket sealing of documents in that "[t]he presumption that documents should not be sealed necessitates the court's watchful eye when blanket sealing provisions are proposed.") (citing *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597-99 (1978)); *Suntoke,* 2007 WL 1455847, at *1 ("A blanket sealing order such as that apparently requested would rarely, if ever, be appropriate.").

       With this legal framework regarding sealing in mind, the Court turns to each motion to seal and the parties' proffered reasons for such sealing.   The Court notes at the outset that although not a factor in determining whether the motions will be granted, neither party has objected to any of the motions to seal addressed by this Ruling.

### 2.     <u>Pending Motions to Seal</u>

       All eight  pending motions to seal have been  filed pursuant to Local Rule 5(e)(3) and (e)(4) of Civil Procedure.  As to each motion, the movant alleges that there are "clear and compelling reasons" to seal the  material at issue and that the request for sealing is  "narrowly tailored to serve those reasons."  D. Conn. L. Civ. R. 5(e)(3).  Furthermore, to the extent that such a practice is feasible, the materials presented for sealing have been filed in redacted and unredacted form to designate the particular sections that the party would like sealed.  That is to say, where specific redactions suffice, counsel have designated such material to be redacted; and  where  redaction of material would not suffice to protect its confidential nature, a limited number of entire documents

have been presented for sealing. In this regard, able counsel have performed dutifully in this sealing endeavor.

Furthermore, counsel have followed the stipulated procedures in the Court-approved SPO [Doc. 24-1] in that they have filed the materials sought to be sealed provisionally under seal and then filed memoranda of law to explain the specific reasons why said material should remain sealed.[8] Doc. 24-1, ¶ 11.

### a.   Doc. 45

Examining the individual motions, the Court first addresses Doc. 45, Travelers' Motion to Seal designated portions of Excalibur's Motion to Compel [Doc. 42 & 43] and the Exhibits attached to the Declaration of Raymond Mastrangelo in support of that motion [Doc. 44, Ex. 3-12 and 15-17]. After careful review of the material presented for sealing, I find that, as described by counsel, the documents contain "privileged communications between Travelers and its counsel;" "privileged communications between non-parties and their counsel;" and information that "implicates the reputational interests of third parties not before the court." Doc. 45, p. 1

Specifically, the material sought to be redacted from Excalibur's Motion to Compel quotes from and provides privileged or confidential information contained in the attached Exhibits, also sought to be sealed. For example, the Exhibits include, *inter alia,* insurance policies issued by the Underwriters to the broker, whose confidential identity was sealed by the Court's prior Ruling [Doc.

---

[8]   Counsel have also cooperated by showing opposing counsel potentially confidential papers intended for filing. That way opposing counsel have been provided the opportunity to request any necessary redactions prior to filing and then to file explanatory memoranda in support of sealing.

48].[9]  The redactions in those policies protect the identity of that broker.  Doc. 44-3 to -4 (Ex. 3-4).

Other proposed redactions of the broker's name appear in Exhibits 11, 12, 16 & 17 (Excalibur's First

Set of Document Production Requests and  First Set of Interrogatories and Travelers' Responses and

Objections to these discovery requests).  Doc. 44-11, -12 , -16, &  -17.

   As set forth *supra*, this Court has previously examined the potential damage to the

reputational interest and finances of the broker and has agreed to seal its identity.  Therefore, the

identity of the broker will remain sealed.  Doc. 44-3 to -12 &  44-15 to -17 (Ex. 3-12, 15-17).

Travelers also seeks redaction of language providing legal advice to Travelers in Exhibits

such as Ex. 5-8 and 10.  *See, e.g.*, Doc. 44-5 (Ex. 5:  status report sent to Excalibur by Travelers on

March 14, 2007, containing a legal memorandum from counsel Mayer Brown, evaluating claims

against the broker by its clients and providing other legal advice on a variety of topics); Doc. 44-6

to -8, & 44-10 (Ex. 6-8, 10:  detailing privileged legal advice from Mayer Brown to the Underwriters

and legal advice to Travelers from its own counsel).

With respect to the attorney-client privilege, it is well-settled within the Second Circuit that

the attorney-client privilege may be a sufficiently compelling reason to defeat the public's right of

access to judicial documents.[10]  *See, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125

---

[9]  As the Court observed in its ruling on Travelers' previous motion, "[n]on-parties' privacy interests may comprise 'a strong factor weighing against disclosure of their identities.'" Doc. 48, p. 17 (quoting *In re Savitt/Adler Litigation,* No. 95-CV-1842 (RSP/DRH), 1997 WL 797511, at *3 (N.D.N.Y. Dec. 23, 1997)).  "Based on Travelers argument that publicity of the broker's identity, and thus its clients' claims against it, would lead to damage to its business reputation and finances," the Court "grant[ed] Travelers' sealing request to the extent that it [sought] protection *solely of the broker's identity*." Doc. 48, p. 19 (emphasis in original).

[10]  The attorney-client privilege extends only to those communications "that are necessary to obtain informed legal advice" and which "would not be made without the privilege." *United States*

(2d Cir. 2006) (recognizing attorney-client privilege as potential "compelling reason" to seal documents, especially where party asserting the privilege is not the party who seeks to admit such documents into the record).  Accordingly, the Court will grant the motion to seal as to the material covered by the attorney-client privilege.[11]

In addition, the Court will approve requested redactions of sections of Exhibits containing confidential settlement discussions between the broker and its clients.   Doc. 44-7 to -9 (Ex.  7-9). There is no established presumption of public access with respect to confidential settlement discussions and documents.  *See, e.g., Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004), *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857 (2d Cir. 1998).  Rather, the Second Circuit has recognized the value of confidentiality in settlement negotiations.  *See, e.g., In re Teligent, Inc.,* 640 F.3d 53, 57-58 (2d Cir. 2011) ("Confidentiality is an important feature of the mediation and other alternative dispute resolution processes. Promising participants confidentiality in these proceedings promotes the free flow of information that may result in the settlement of a dispute, and protect[s] the integrity of alternative dispute resolution generally.") (internal citations

---

*v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir.1991).  For a communication to be protected by the privilege, (a) the communication must be between client and counsel; (b) the communication must be intended to be kept confidential and actually be kept confidential; and (c) the communication must have been made for the purpose of obtaining or providing legal advice. *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).

[11] With respect to legal memoranda of Mayer Brown, the Court also recognizes the applicability of the "work product doctrine," which provides qualified immunity of an attorney's work product from discovery or other compelled disclosure.  *See* Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).")*; Hickman v. Taylor,* 329 U.S. 495 (1947).  *See also In re Sealed Case*, 676 F.2d 793, 809-10 (D.C. Cir. 1982) ("to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification").

omitted); *Palmieri v. New York*, 779 F.2d 861, 865 (2d Cir. 1985) (noting that "[s]ecrecy of settlement terms . . . is a well-established American litigation practice") (citation omitted).[12] Portions of documents pertaining to the details of the  broker's dispute with its client, and specifically the negotiations to resolve those disputes, will be sealed.  Doc. 44-5 to -10, &  44-15 to  -16 (Ex. 5-10 & 15-16).

The Court recognizes that all of the documents at issue in Doc. 45 reveal sensitive business information that both Travelers and the broker seek to protect, such as confidential proprietary information, documents and client data.  Doc. 46, p. 11.  The parties to an action often have a significant interest in protecting such information from public dissemination.  *See, e.g., Crossman v. Astrue*, 714 F.Supp. 2d 284, 287 (D.Conn. 2009) (holding that "there can be (and often are) considerations of personal privacy, public safety, or a business's propriety information, such as trade secrets or confidential research, that can trump the right of the public to access court records").  The specific portions of documents revealing sensitive business information may be redacted.

Lastly, the Court notes that, as Travelers represents, "the information contained in Exhibits 3-11 and 15 that is  subject to this Motion to Seal was furnished by Travelers to Excalibur under the express condition that Excalibur maintain its confidentiality."  Doc. 46, p. 12.  Although such confidentiality agreements are not binding on the Court with respect to sealing, the Court may consider their terms as one factor in its analysis when deciding to seal.  *See Gambale*, 377 F.3d at

---

[12]  *See also Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) ("There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. . . . In order for settlement talks to be effective, parties must feel uninhibited in their communications. ").

143-44 (portions of hearing transcript redacted to remove settlement amount because parties previously agreed to preserve such information as confidential).

In sum, the Court finds that sealing designated portions of Excalibur's Memorandum in Support of its Motion to Compel [Doc. 42, 43] and Exhibits attached to the Declaration of Raymond Mastrangelo [Doc. 44-3 to -12, 44-15 to -17 (Ex. 3-12, 15-17)] is supported by "clear and compelling reasons" – including, *inter alia*, the reputational interests, settlement discussions, and sensitive business information of a non-party and the attorney-client privilege . *See* D. Conn. L. Civ. R. 5(e)(3). Furthermore, proposed sealing has been "narrowly tailored to serve those reasons" in that Travelers asks "only that the Court seal those portions of those documents that contain attorney-client privileged communications, attorney work product, confidential policyholder information, and/or descriptions of highly-confidential settlement discussions." Doc. 46, p. 14-15. The remainder of the documents Excalibur submitted with respect to its Motion to Compel [Doc. 42] will remain subject to public inspection.

> **b.** **Doc. 52**

In Doc. 52, Travelers moves the Court to seal portions of Exhibit 1 to Travelers' Opposition to Excalibur's Motion to Compel [Doc. 50-1]. Exhibit 1 is comprised of an email[13] and attachments, which include: (a) a letter from Charlaine Dacres, Travelers' "Reinsurance Claims Consultant," containing the broker's name, names of its insurance company clients, and the gross amount of a settlement between the broker and Travelers (and its affiliates); a letter from the broker's in-house

---

[13] The email, dated 8/18/2010, is from Charlaine Dacres of Travelers to Marty Peterson of Guy Carpenter & Company, and simply transmits the attachments by requesting that the recipient "accept this email and attachments" in response to "a request regarding [a certain] insured." Doc. 50-1.

legal counsel to another broker, detailing the broker's consultations with said in-house counsel and making legal recommendations as to how the broker should respond to its clients' claims; and a portion of an insurance proposal form filled out by the broker, which was provided to Travelers in the context of confidential settlement discussions and contains the broker's comments on then-pending litigation. *See* Doc. 50-1, Doc. 53, p. 2-3.

The Court finds that sealing the designated portions of the documents is proper in that the gross settlement amount between Travelers (and its affiliates) and the broker was part of confidential settlement discussions. *See Gambale*, 377 F. 3d at 143. The letter from the broker's in-house counsel communicated confidential legal advice in response to the broker's clients' claims. *See Lugosch*, 435 F.3d at 125. Finally, the broker's proposal form, although not traditionally privileged as an insurance document, was conveyed to Travelers during confidential settlement negotiations and contained the broker's evaluation of then-pending litigation against it. Therefore, the proposal may also be sealed.

In sum, as Travelers asserts, Exhibit 1 contains information that is identical or similar to information that the Court already ordered sealed in the context of an earlier motion [Doc. 48]."[14] Doc. 52, p. 1. Specifically, Exhibit 1 contains: "(a) the identity of a non-party reinsurance broker whose reputational interests would be affected by the public disclosure of its identity; (b) details of confidential settlement negotiations between Travelers and the broker; and (c) the broker's privileged attorney-client communications." *Id.* As the Court has previously held, each of these kinds of information invoke "clear and compelling" grounds to seal. Because Travelers has narrowly

---

[14] In its prior Ruling, this Court sealed "the broker's identity in view of the broker's non-party status with respect to the present litigation and the fact that the documents were shared with Travelers in the context of confidential settlement negotiations." Doc. 48, p. 19.

tailored its sealing request to serve those particular purposes through careful redactions, this motion will be granted.

        c.      **Doc. 58 & Doc. 61**

     In Doc. 58 and Doc. 61, Excalibur and Travelers each move, respectively, to seal Exhibits 1, 3, 4 and 7 to the Declaration of Angela Aloisio, filed by Excalibur in support of its Memorandum in Opposition [Doc. 57] to Travelers' Motion for Leave to Amend Complaint [Doc. 56]. *See* Doc. 59-1, 59-3 to -4, & 59-7. Excalibur filed its motion [Doc. 58] "because Plaintiff has designated these [Exhibits] as confidential documents and has requested Defendant to file them under seal." Doc. 58, p. 2. Travelers then filed its own corresponding motion [Doc. 61] and, as agreed upon with Excalibur, the memorandum in support of both parties' motions to seal [Doc. 62]. *See* Doc. 24-1 (SPO) at ¶ 11.

     The Exhibits at issue are attachments to the Declaration of Angela Aloisio, the "Assistant Vice President of Armour Risk Management, Inc.," which is the "entity that manages the business of Excalibur." Doc. 59, ¶ 1. These Exhibits include: Exhibits 1 and 3, two related documents which Travelers indicates are "an internal Travelers report initially created in 2008 and updated over time" and "an update from Travelers to Excalibur that incorporates large portions of the internal report verbatim." Doc. 62, p. 4. Travelers asserts that both documents recount "the advice and impressions that the broker received from its counsel, Slaughter and May, regarding the claims that had been asserted against the broker by its insurance company clients" and "the advice that the Affiliates and Underwriters received from their counsel, Mayer Brown, respecting the applicable policy year." *Id.*, p. 4-5. Each document also includes details of settlement negotiations between the brokers and its clients, amounts claimed by the clients, and the identities of said broker and its clients.

Exhibit 4 is a "report that Travelers submitted to Excalibur shortly after it and the Affiliates concluded their confidential settlement with the broker" and thus contains details of that settlement. *Id.*, p. 5.   Lastly, Exhibit 7 is a letter Aloisio allegedly reviewed in May 2010, containing what Travelers describes as "verbatim recitals of two provisions of the confidential settlement agreement" as well as "a term from an earlier, similarly confidential agreement between Travelers and the broker." *Id.*

Upon close review of the documents, the Court concludes that the redacted material is the kind the Court has previously sealed in this matter due to "clear and compelling" reasons – namely, protection of privileged attorney-client communications; confidential settlement negotiations; and documents implicating the privacy, reputational interest, and proprietary information of the non-party broker. *See, e.g.*, *Lugosch*, 435 F.3d at 123 (recognizing attorney-client privilege as sufficiently compelling reason to seal); *Gambale*, 377 F.3d at 143 (no established presumption of access to confidential settlement discussions and documents); *In re Savitt/Adler Litig,*, 1997 WL 797511, at *3 (non-parties' privacy interests comprise "strong factor weighing against disclosure of their identities").

With respect to the tailored scope of the sealing request , the Court concurs with Travelers that the four documents contain such a quantity of confidential information that redaction "is not a practical alternative" to sealing them in their entirety.   Doc. 62, p. 5 n. 2.   Accordingly, these documents give rise to the rare situation in which the Court will authorize sealing in total.   The motions set forth in Doc. 58 and Doc. 61 will be granted.

### d.   <u>Doc. 77</u>

In   Doc. 77, Travelers requests the Court to seal portions of Excalibur's Supporting

Memorandum [Doc. 75-17] with respect to Excalibur's second Motion to Compel [Doc. 75], as well as designated Exhibits to the accompanying declaration of Raymond S. Mastrangelo [Doc. 75-3 to -5 and Doc. 75-8 to -16].[15]   Once again, these documents contain: privileged communications between Travelers and its counsel;  privileged communications between nonparties and their counsel; and information implicating the reputational interests of third parties who are not before the Court.   Some of the documents also contain details about confidential settlement discussions between Travelers and its insured, and a few were previously filed under seal as a result of earlier motions in this case.[16]

 This sealing request is based on reasons the Court has previously held to be "clear and compelling." *See* D. Conn. L. Civ. R. 5(e) (3).   Moreover, the redactions sought are "narrowly tailored to serve those reasons."   *Id.*   But for two documents, Travelers requests to seal only designated portions of the documents at issue; and the totality of the contents of the two Exhibits to be sealed in their entirety make redaction impracticable.   In sum, the Court will grant the motion pursuant to Local Rule of Civil Procedure 5(e)(3).

> ### e.   Doc. 84 and 91

Travelers has moved in Doc. 84 and Doc. 91 to seal two sets of its own papers provisionally

---

[15]  Pursuant to the SPO, Travelers designated materials within Excalibur's intended filings as "Confidential Discovery Material."   Doc. 24-1, ¶ 11.   Excalibur then filed these papers in conjunction with its motion to compel in redacted form; and Travelers filed the corresponding motion to seal and supporting memorandum.   Doc. 77, p. 1-2.

[16]  For  purposes of  clarity, the Court  acknowledges that a few of the documents  at issue are the subject of other motions to seal which are also addressed in this Ruling.  *See* Doc. 44-9 & 75-5; Doc. 44-5 & 75-10; Doc. 44-6 & 75-11; and Doc. 44-10 & 75-12.   Moreover, the Court has previously granted a motion to seal the designated portions of two particular documents.  *See* Doc. 75-8 & 75-9 (redacted material previously sealed in Doc. 35-4 & 35-5 by Doc. 48 (Ruling, dated 5/10/2012)).

due to Excalibur's designation of the attached Exhibits as "Confidential Discovery Material" under the SPO [Doc. 24-1]. The exhibits include excerpts of the deposition transcripts of witnesses Diane Ferro and Angela Aloisio; and Excalibur has designated the entire deposition transcripts of these two witnesses as "Confidential Discovery Material." Travelers explains that it objected to Excalibur's "confidential" designation of the transcripts, but, in accordance with the operative SOP [Doc. 24-1, ¶ 11], filed this motion to afford Excalibur "the opportunity to submit a memorandum in support of sealing." Doc. 84, p. 1; Doc. 91, p. 2.

In particular, pursuant to Doc. 84, Travelers requests that the Court seal provisionally its Unredacted Memorandum of Law in Support of Travelers' Motion for Pre-Pleading Security; and the attached Exhibit 1 (an excerpt from the deposition transcript of Dianne Ferro's deposition). Pursuant to Doc. 91, Travelers seeks to provisionally seal its Unredacted Memorandum of Law in Opposition to Defendant's Motion to Designate Discovery Material as "Confidential Discovery Material" Pursuant to the Stipulated Protective Order, and the accompanying Exhibits 1 & 2 to the Memorandum (excerpts from the revised deposition transcripts of Angela Aloisio and Diane Ferro, respectively).

Travelers has acted in accordance with the provisions of the SPO. Doc. 24-1, ¶11 . The documents addressed in Travelers' two motions to seal (Doc. 84 and 91) may therefore be provisionally sealed to preserve their confidentiality pending the outcome of Excalibur's motion to designate the deposition transcripts of witnesses Diane Ferro and Angela Aloisio as "Confidential Discovery Material" and Excalibur's possible filing of a motion to seal the transcripts thereafter.[17]

_____

[17] The Court clarifies that even if it upholds Excalibur's designation of the deposition transcripts as "confidential," the transcripts will only remain sealed if Excalibur requests sealing by "demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored

18

Doc. 74.  The motion regarding Excalibur's designation of the transcripts as "confidential" will be resolved below.

> ### f.  __Doc. 101__

Pursuant to Doc. 101, Travelers seeks to seal designated portions of the transcript of the hearing before this Court on February 26, 2013 [Doc. 95].  In particular, Travelers moves to seal the lines and pages of the transcript identified in Schedule A, which include materials this Court has previously held warrant sealing, both in this ruling and in prior opinions.  Such materials reveal: (a) privileged communications between Travelers and its lawyers;[18] (b) terms of Travelers' confidential settlement agreement with its insured;[19] and (c) information implicating the reputational interests of the non-parties – *i.e.*, the non-party broker and the claimants in the underlying suit

---

to serve those reasons."  D. Conn. L. Civ. R. 5(e)(3).

[18]  According to Travelers, "[d]uring and after its settlement discussions with the broker, Travelers received advice from counsel" and "Travelers shared some of these communication with Excalibur (under a confidentiality agreement) at a time when the parties still shared a common interest with respect to the broker's claims."  Doc. 102, p. 2-3.

Although "it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence," *In re Howowitz*, 482 F.2d 72, 81-82 (2d Cir. 1973), disclosing "attorney-client" privileged documents to a party with a "common interest" does not destroy their confidentiality provided that the party with the privilege exercises a degree of care to preserve said confidentiality,  *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). The "common interest rule, as it is called, "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."  *Schwimmer*, 892 F.2d at 243.  Furthermore, "it is . . . unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply." *Id.* at 244 (citation omitted).

[19]  As Travelers has represented in its supporting brief, "Travelers (and certain of its affiliates) entered into settlement agreements to resolve the broker's coverage claims under the Gulf policies. The final agreement was a confidential settlement agreement between the broker on the one hand, and Travelers and its affiliates on the other hand, dated February 17, 2010."  Doc. 102, p. 2.

against it.[20]   The Court has previously held  that information protected by the attorney-client privilege, confidential settlement negotiations and terms, and information infringing the privacy interest of a non-party may all be properly subject to sealing.  *See, e.g., Lugosch*, 435 F.3d at 123 (parties have significant interest in protecting documents subject to attorney-client privilege and that interest is sufficient to defeat presumption of public access); *Gambale*, 377 F.3d at 143 (no established presumption of public access with respect to confidential settlement discussions and documents); *In re Savitt/Adler Litigation*, No. 95–CV–1842 (RSP/DRH), 1997 WL 797511, at *3 (N.D.N.Y. Dec. 23, 1997) (non-parties' privacy interests may comprise "a strong factor weighing against disclosure of their identities").  Such material presents the kind of "substantial interests" that the Second Circuit has recognized as overcoming the presumption of public access to judicial documents.  *Lugosch*, 435 F.3d at 123.

The Court has carefully reviewed Travelers'  designated portions of the transcript to be redacted and determined that the designations have in fact been made for the specified "clear and compelling reasons" discussed *supra*.  Moreover, these designations have been "narrowly tailored" to serve those reasons, often  redacting items by word, phrase, and line as opposed to entire pages. Accordingly, pursuant to Local Rule of Civil Procedure 5(e)(3), Traveler's motion to seal the portions of the February 26, 2013 transcript that are listed in Schedule A will be granted.

**B.**     **Motions to Designate Material as "Confidential Discovery Material"**

Finally, the Court will address two motions to designate discovery material as "confidential"

---

[20]  For example,  as Travelers  asserts, the materials describe claims against the non-party broker by its clients, including "allegations that the broker engaged in fraud and a number of other types of wrongdoing." Doc. 102, p. 2. Travelers explains  that "[r]evealing the claimants' identities or the identity of the underlying disputes is tantamount to revealing the broker's identity."  *Id.*, p. 4.

pursuant to the SPO.  As set forth *supra*, Travelers and Excalibur entered into the SPO [Doc. 24-1], and the Court adopted and entered that order on March 1, 2012 [Doc. 35].  Pursuant to the SPO, "Confidential Discovery Material" is defined as material that "a party believes, in good faith, includes personal information or confidential, commercial,  proprietary business information or non-public financial data, or implicates the commercial, proprietary or reputational interests of third parties." Doc. 24-1, ¶ 1.  If a party decides to file "Confidential Discovery Material" with the Court, that party must give advance notice to the other party and, if said other party so requests, make the filing "under seal in accordance with the procedure set forth in the District of Connecticut Local Rule 5(e) and accompanied by a motion to seal from the requesting party."  *Id.*, ¶ 11.

At the outset, the Court notes that in general transcripts of deposition testimony – that is, documents "passed between the parties in discovery" – are not judicial documents to which the public has a presumptive right of access.  *United  States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995) ("*Amodeo II*").  Such documents, prior to admission into the record in support of a motion or as evidence at trial, "play no role in the performance of Article III functions" of a federal judge.  *Id.*; *accord  SEC v. TheStreet.com*, 273 F.3d 222, 233 (2d Cir.2001) (holding that deposition transcripts were not "judicial documents" that carried presumption of public access); *Stern v. Cosby*, 529 F. Supp. 2d 417, 421 (S.D.N.Y. 2007) (deposition transcript and videotape held not to comprise "judicial documents" because they were "merely materials generated in discovery" and not currently relevant to court's performance of a judicial function).

As the Supreme Court held  in *Seattle Times Co. v. Rhinehart*, "pretrial depositions and interrogatories are not public components of a civil trial." 467 U.S. 20, 33 (1984).  The Supreme Court reasoned as follows:

Such proceedings were not open to the public at common law, *Gannett Co. v. DePasquale*, 443 U.S. 368, 389, 99 S.Ct. 2898, 2910, 61 L.Ed.2d 608 (1979), and, in general, they are conducted in private as a matter of modern practice. *See id.*, at 396, 99 S.Ct., at 2913–2914 (BURGER, C.J., concurring); Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L. Rev. 1 (1983). Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

*Id.*  Put simply, the public has no constitutional, statutory, or common-law right of access to unfiled discovery.

As in this case, a party may deem material "confidential" under a stipulated protective order – thereby ensuring, for example, that it may be disclosed only to certain people (*e.g.*, counsel and their staffs, parties, deposition or trial witnesses, experts, etc.) and used only for purposes of the particular litigation.   The issue of sealing then only arises when the documents are filed with the Court as "judicial documents" to assist the Court in its Article III function.  At that point, the Court must make a determination as to whether such materials warrant sealing.

In deciding whether to seal depositions pursuant to a request under the SPO, the Court may view the terms of the SPO itself as a factor in its analysis.  Although not binding, the Court may consider the terms to determine the parties' intentions regarding what should be "confidential."  *See Gambale*, 377 F.3d at 143-44 (material in  hearing transcript redacted to remove settlement amount because parties previously agreed to preserve such information as confidential).  However,  under Local Rule 5(e)(3), "[n]o document shall be sealed merely by stipulation of the parties."  Even if the parties were able to  agree as to which materials should be deemed "confidential," in order to seal, it remains incumbent on the Court to make "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons." D. Conn.

L. Civ. R. 5(e)(3).  *Cf. id.*, 5(e)(2) ("A confidentiality order or protective order entered by the Court to govern discovery *shall not qualify as an order to seal* documents for purposes of this rule.")(emphasis added).

### 1.   Pending Motions - Doc. 74 & Doc.  80

#### a.   Doc. 74

In Doc. 74, Excalibur has moved to designate six deposition transcripts as "confidential" in their entirety.  The transcripts include the testimony of the following witnesses:  Carol Barnhardt, Steve Ranalli, Ann Brandt, Kathy Barker, Diane Ferro, and Angela Aloisio.  Doc. 74, p. 1.  As Attorney Raymond S. Mastrangelo, counsel for Excalibur, stated in his affidavit [Doc. 74-1], Travelers has objected to the designation of these entire deposition transcripts as confidential; and the parties have been unable to reach an agreement on this issue without the Court's assistance.  Doc. 74-1, ¶ 3.  Whether Excalibur's designation of the transcripts as confidential may stand is the sole issue before the Court.  Excalibur does not, at this time, request that the documents be sealed. Rather, in its supporting memorandum, "Excalibur notes that Travelers has not given notice under the [SPO] that it intends to file any of the transcripts with the Court, nor is there presently before the Court any motion to seal the depositions."  Doc. 74-10.

Since the date the motion was filed, Travelers filed excerpts from the deposition transcripts of two witnesses at issue ( Diane Ferro and Angela Aloisio) in support of Travelers' Motion for Pre-Pleading Security.  *See* Doc. 81 & 84.  While disputing Excalibur's "confidential" designation of the transcripts, Travelers filed the excerpts provisionally under seal, providing the Court with the opportunity to determine whether their status should remain "confidential."  If the Court determines

that these transcripts may remain "confidential," pursuant to the SPO, any party intending to file such material with the Court must do so "under seal in accordance with the procedure set forth in the District of Connecticut Local Rule 5(d) and accompanied by a motion to seal from the requesting party." Doc. 24-1, ¶ 11. Although Travelers filed the materials under seal with its Motion to Seal [Doc. 83], Excalibur has filed no corresponding memorandum in support of said sealing. The documents will thus only be sealed provisionally.[21]

In brief, Excalibur claims that it "has a good faith basis for designating each of the depositions as confidential because each  'includes personal information, or confidential, commercial, proprietary business information or non-public financial data . . . ' " Doc. 74-10, p. 5 (quoting Doc. 24-1 at ¶ 1).[22]  Excalibur states that not only is such designation all that is required under the SPO, but Travelers itself  "does not seriously contend that the depositions do not include such information." Doc. 74-10, p.  5.[23]  Rather, Travelers objects only to the designation of each "deposition as a whole."  *Id.*, p. 5-6.

Excalibur quotes the SPO to show that a party may "designate *depositions* by written notice,"

---

[21]   If Excalibur thereafter requests that the Court seal any portion of the excerpted testimony filed by Travelers in support of its motion for pre-pleading security, Excalibur must designate the particular testimony it would like redacted and file the requisite supporting memorandum, demonstrating "clear and compelling reasons" to seal.  D. Conn. L. Civ. R. 5 (e)(3)-(4).

[22]   Excalibur explains  that  "[e]ach  of these witnesses were questioned extensively about policies and procedures at Excalibur regarding claims handling and payment" and "[i]n many instances, such questioning went far beyond claims at issue and delved into company policy and strategy which is confidential and proprietary in nature."  Doc. 74-10, p. 6.

[23]   For example, Excalibur points to the fact that the transcripts at issue reveal the broker's identity.  Excalibur thus states, "Travelers does not seriously contend that the depositions do not include such [confidential] information nor could it in light of the exposure of the identity of the Broker in each of the depositions."  Doc. 74-10, p. 5.

interpreting that language to mean that a party may designate entire depositions, as opposed to only portions, as confidential.  Doc. 74-10, p. 2 ( quoting Doc. 24-1) at ¶ 7) (emphasis in original).  With respect to the six depositions at issue, Excalibur maintains that it "did not, nor was it required to specifically delineate by page and line which portions of the deposition[s] [are] confidential." *Id.*, p. 3.  Excalibur maintains  that "[s]uch a requirement was not contemplated in the [SPO] and would be expensive, onerous and unnecessary at this stage." *Id.*

Travelers, on the other hand, reads the language of the SPO to suggest that "[a] party may not designate an entire transcript as 'confidential' merely because some of the testimony contains confidential information." Doc. 90, p. 2.   Rather, the SPO specifies that "discovery material" is defined to include "*deposition testimony*." *Id*.  (quoting Doc. 24-1, ¶ 1) (emphasis in original).  Moreover, Travelers contends that Excalibur bears the burden of demonstrating that said testimony qualifies as "confidential" and Excalibur has failed to make such a showing. *Id.*  In other words, Excalibur "has identified no basis under which an entire deposition transcript may be designated as confidential." Doc. 90,  p. 2-3.

The Court stresses to the parties the distinction between material designated as *confidential during discovery* and material that the Court orders to be *sealed* from the public.   In general documents exchanged between parties are not subject to public disclosure unless also filed with the Court.   There is no presumptive right of access to said discovery materials.   The label of "confidential" pursuant to a protective order, such as the SPO, then provides protection from public dissemination by specifying the proper recipients and use of said materials.   Whether particular material is "confidential" pursuant to a governing agreement may require the Court to interpret the language of that agreement.   Furthermore, under such agreements, Courts of this Circuit have upheld

25

as confidential not only entire *documents*, but entire *sets* of documents containing material which is "confidential."  *See, e.g.*, *Brookdale Univ. Hosp. and Med. Center, Inc. v. Health Ins. Plan of Greater New York*, No. 07-cv-1471 (RRM)(LB), 2008 WL 4541014, at *2 (E.D.N.Y. Oct. 7, 2008) (upholding confidentiality designations regarding categories of documents (including "Business Documents," protecting " trade secrets, confidential research, development, or other commercial information")); *Haus v. New York*, No. 03 Civ. 4915 (RWS) (MHD), 2006 U.S. Dist. LEXIS 35606, at *4-5 (S.D.N.Y. May 24, 2006) (upholding designation of document as "confidential" where "critique reports as a whole" were governed by protective order).  Such courts have been "disinclined to undertake the type of document-by-document weighing process endorsed by plaintiffs, at least in the context of discovery materials, where the public right of access is at a minimum."  2006 U.S. Dist. LEXIS 35606, at *5 (citing *Amodeo II*, 71 F.3d at 1050).

Sealing, on the other hand, prevents the public from viewing documents used by the court in its judicial function.  Accordingly, material to  be sealed is subject to the  strict standards of Local Rule 5(e)(3).  Blanket sealing of documents is disfavored in all but the  rarest circumstances; and the sealing of designated portions must be"narrowly tailored" and supported by "clear and compelling reasons." D. Conn. L. Civ. R. 5(e)(3).

In reviewing Excalibur's designation of six deposition transcripts as "confidential," the Court notes that the SPO fails to  provide an explicit standard to assist the Court in judging challenges to confidentiality designations.  The SPO simply states that under its terms, if the parties are unable to resolve an objection to the designation of any discovery material as confidential, "the designating party may move the Court to designate the Discovery Material as Confidential Discovery Material and the burden will be on the designating party to show that the Discovery Material falls within the

scope of Paragraph 1." Doc. 24-1, ¶8.  Paragraph one lists the range of materials to be governed by

the SPO, "including but not limited to  documents, deposition testimony, deposition exhibits,

answers to interrogatories, responses to requests to admit and other written, recorded or graphic

matter ('Discovery Material') produced by or obtained from any party or non-party respondent from

whom Discovery Material may be sought (the 'Producing Party') during this litigation." *Id.*, p. 1.

Travelers makes much of the fact that included in the list of materials in the SPO's preamble

are "documents" and "deposition testimony" – *but not* deposition *transcripts*.  "   Doc. 90, p. 2-3.

Travelers argues that "depositions and documents are entirely different creatures" because, for

instance, a party "can require the admission of a document in its entirety on submission of a portion

under Federal Rule of Evidence 106;" but "deposition testimony [must be] designated by page and

line." *Id.*, p. 3.  Travelers thus asserts that "[a] deposition is not a single document" but rather a

"compilation of *testimony* that can cover a broad swath of topics."  *Id.* at p. 3 (emphasis added).

Travelers concludes that under the SPO, an entire deposition transcript may not be deemed

"confidential," only particular "testimony" contained therein. *Id.*

Excalibur, however, focuses on the SPO's language in ¶ 7 with respect to the manner of

designating materials as confidential, which states, in part, "[t]he parties shall designate *depositions*

or other pretrial testimony confidential by written notice."  Doc. 24-1, ¶ 7 (emphasis added).

Excalibur surmises that the SPO contemplates and actually encompasses entire "depositions" being

designated as confidential.

I find that, absent clear language barring the designation of an entire deposition transcript as

confidential, such designation is allowed.  Nowhere in the SPO is there a proscription against

designating an entire document as "confidential."  Moreover, the SPO expressly governs the handling

of "documents" and, despite Travelers' contentions otherwise,  a deposition transcript is a form of "document."  Granted, a transcript may contain *testimony* on several topics and be comprised of various lines and pages; but many documents, such as business reports, contain sections, headings, and topics.   Furthermore, it is not outside the realm of possibility that some documents, including certain transcripts, may be so rife with confidential material as to necessitate a confidential label for their entire contents under the SPO.  Lastly, as Excalibur notes, the parties contemplated designation of "depositions" as  confidential by written notice.  Doc. 24-1, ¶ 7.  Such language suggests that, unlike in sealing requests, depositions may be labeled as "confidential" in their entirety under the agreement.

As to the substance of the six transcripts at issue, Excalibur has  represented that the questioning "went far beyond claims at issue and delved into company policy and strategy which is confidential and proprietary in nature." Doc. 74-10, p. 6.  "Additionally, several of the witnesses deposed are at the most senior levels of management, who thereby are privy to much more confidential information of the company than lower lever employees."[24]  Doc. 100, p. 5.

Travelers counters by arguing that the company policies at issue are either known to the public or moot because Excalibur "is effectively no longer in business and has no competitors." Doc. 90, p. 4-5.  Travelers thus suggests that "one might legitimately ask whether Excalibur could possibly have any 'Confidential Discovery Information' whatsoever."  *Id.*, p. 5.

Traveler's main objection, however, remains the designation of  the *entire* transcripts as "confidential."  In particular, Travelers objects to the "significant burden" arising under the SPO  of

---

[24]   According  to Excalibur,  "Ms.  Barker is the president of the company; Ms. Ferro and Mr. Ranalli are vice-presidents and Ms. Brandt and Ms. Aloisio are assistant vice-presidents." Doc. 100, p. 5.

having to "give advance notice if it seeks to file Confidential Discovery Material . . . and respond to any motions to seal if it opposes such motions."  Doc. 90, p. 6-7 n. 7 (citing Doc. 24-1, ¶ 11). Travelers, however, agreed to the terms of the SPO and cannot now simply avoid those terms after jointly and successfully presenting the agreement to the Court for approval.

The language of the SPO regarding the standard for designating discovery materials as "confidential" is plainly "good faith."  Doc. 24-1, p. 1.  The party making the designation must believe "in good faith" that the material contains "personal information or confidential, commercial, proprietary business information or non-public financial data, or implicates the commercial, proprietary or reputational interests of third parties." *Id.*, ¶1.  "Good faith," is generally a subjective standard, "[a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage."  Black's Law Dictionary (9th ed. 2009).  It is an "an elusive idea, taking on different meanings and emphases as [one moves] from one context to another — whether the particular context is supplied by the type of legal system (*e.g.*, common law, civilian, or hybrid), the type of contract (e.g., commercial or consumer), or the nature of the subject matter of the contract (e.g., insurance, employment, sale of goods, financial services, and so on)." Roger Brownsword, *et al.*, "Good Faith in Contract," in Good Faith in Contract: Concept and Context 1, 3 (Roger Brownsword ed., 1999).

In the present action, there is no evidence that Excalibur failed to act in subjective "good faith" by designating the six deposition transcripts as "confidential."[25]  Rather, Excalibur contends

---

[25]  Granted, there unfortunately remains  a  certain level of animosity between the parties' counsel that has pervaded the proceedings and papers in this action.  *Ad hominems* and general accusations, absent factual proof, do not, however,  equate with establishing "bad faith."  *See, e.g.*,

that there are numerous passages contained in the depositions which should be designated as "confidential" and that instead of spending the time and money required to parse each passage, they have requested to designate the transcripts in full for discovery purposes. Doc. 74-10, p. 4.

Based on the language of the SPO and the parties' factual representations, I uphold Excalibur's "good faith" designation of the deposition transcripts as "Confidential Discovery Materials" in light of their contents. There is no indication that designation of an entire document, or in this case transcript, violates the terms of the parties' SPO. Excalibur's motion will be granted.

To be clear, Travelers may nonetheless rest assured that by allowing the designation of said discovery materials as "confidential," the Court does not mean to suggest that it will then *seal* those materials in their entirety if Excalibur later presents them for sealing. In the context of sealing judicial documents, all requests must not only be supported by "clear and compelling reasons," they must be "narrowly tailored" to serve those reasons. D. Conn. L. Civ. R. 5(e)(3). As to the deposition transcripts at issue, if Excalibur ultimately requests sealing by the Court, Excalibur must designate *the particular lines and/or passages to be sealed* and establish the particular basis for each sealing.[26] No general description of the passages or bases for sealing will be sufficient. That should limit

---

Doc. 80-1, p. 2 (Travelers accuses Excalibur of "ostensibly" believing it "can cloak obviously non-confidential deposition testimony" as confidential under the SPO).

[26]     Under the SPO, if Travelers anticipates filing any "confidential discovery materials" with the Court, Excalibur must review those materials in advance and convey to Travelers whether Excalibur intends to request any portions be sealed. Doc. 24-1, ¶ 11. Such a measure will obviate the need for Travelers to file "confidential" documents under seal if the specific portions presented contain no material that Excalibur wishes sealed. Excalibur has acknowledged such protocol in its brief. Doc. 90, p. 3 ("[A]s Excalibur made clear to Travelers, if and when such notice [of anticipated filing] is provided, Excalibur will respond to any request as to whether the portions of the transcript should be filed under seal."). Such communication between the parties will conserve judicial resources and streamline the proceedings in this complex reinsurance matter.

Traveler's burden in responding to any motion to seal.  Put simply,  Travelers will be able to contest specific redactions, as opposed to entire transcripts.  Then, if the Court grants a sealing motion, only the properly designated passages will be sealed.  As always, redaction will continue as the preferred method for sealing in that blanket sealing is overly broad in all but rare circumstances.

   **b**.  <u>**Doc. 80**</u>

   Finally, with respect to Doc. 80, Travelers has moved to designate certain discovery materials as "Confidential Discovery Materials" on the basis that they "include deposition excerpts and documents produced by Travelers concerning negotiation and settlement of claims brought against its insured, [and thus] contain confidential business information and other information implicating the reputational interests of non-parties."  Doc. 80-1, p. 1.

   According to Travelers, Excalibur originally accepted these designations but thereafter, objected in an exercise of gamesmanship.  Travelers informs the Court:

> With the exception of the deposition excerpts, Travelers designated all of the materials as "Confidential Discovery Material" almost a year ago. Travelers' designations are discrete and precise. *Defendant Excalibur . . . did not object to these designations*. Only after Travelers objected to Excalibur's blanket confidentiality designation as to every page and every word of the six deposition transcripts of Excalibur's witnesses (all of which cannot possibly be legitimately confidential) did Excalibur object to Travelers' designations. Inconsistently, while Excalibur ostensibly believes that the Stipulated Protective Order can cloak obviously non-confidential deposition testimony, Excalibur quibbles with Travelers' pointed page and line-specific deposition confidentiality designations. We respectfully submit that Excalibur cannot have it both ways.

*Id.*, p. 2 (emphasis added).   Needless to say, courts of jurisprudence afford considerably  less credibility  to objections made mainly for strategic purposes, as opposed to those supported by law. Bearing in mind the contentious climate between opposing counsel, the Court will examine and address both the grounds for "confidentiality" designations and the bases for objection.

## 1.   <u>**Designated Materials**</u>

First, Travelers has designated various documents relating to the business and financial interests of Travelers and the reputational and financial interests of the broker. Doc. 80-1, p. 6. These documents include such material as correspondence, business papers, summary sheets, and status updates, discussing and detailing confidential settlement discussions between Travelers and the broker and/or the broker and its claimants. Travelers summarized the documents, describing five categories of confidential information:

(1)   material revealing the identity of the Broker or the underlying claimants;

(2)   material revealing details about the claims brought against [the] Broker or commercially sensitive information about the Broker's business operations;

(3)   material discussing Travelers' exposure to the Broker's claims, Travelers' reserves, and confidential reinsurance allocation matters;

(4)   material revealing confidential or commercially-sensitive settlement terms and/or settlement discussions between Travelers and the Broker, or between the Broker and one or more of the claimants; and

(5)   policy and placement material issued by various insurers to the Broker.

*Id.*

Second, pursuant to the SPO, Travelers designated portions of the deposition of Travelers employee Rosemarie D. Robles as confidential discovery materials.[27]   These excerpts include "testimony concerning confidential and privileged documents that, if released to the public, could damage the Broker's reputational interests." Doc. 80-1, p. 15.   Travelers contends that none of these

---

[27]   "Discovery Material" is defined as "documents, deposition testimony, deposition exhibits, answers to interrogatories, responses to requests to admit and other written, recorded or graphic matter . . .   produced by or obtained from any party or non-party respondent from whom Discovery Material may be sought . . .   during this litigation." Doc. 24 (preamble).

designations "could . . . have come as a surprise to Excalibur" in that the documents were shared during pre-litigation dealings, subject to the provisions of two confidentiality agreements.[28] *See* Doc. 80-1, p. 4 (citing Doc. 29, 29-1, & 29-2).

## 2.   Analysis

Excalibur objects to Travelers' designation of the materials as "confidential" on the grounds that such designations are either an intentional contrivance or simply baseless. In particular, Excalibur argues that "[t]he primary basis for Travelers'[] confidentiality designations [is] its purported concern for the reputational interests of non-parties, *i.e.*, the Broker," but these "concerns are baseless because the identity of the Broker and its involvement in the underlying PA [Personal Accident] LMX Spiral Claims is long and well-known publicly disseminated information." Doc. 98, p. 2. In fact, according to Excalibur, the broker has revealed the identities of the claims and its settlement with its clients in its publicly available 2009 Annual Report. *Id.,* p. 3.

This Court has previously held that the broker's identity will be protected in this case in light of its non-party status and the potential for harm to its reputation and business from the release of its commercially sensitive business information. The privacy interest of non-parties and the protection of commercially sensitive information are both valid grounds for maintaining confidentiality. *See, e.g.*, *Amodeo II*, 71 F.3d at 1050-51 (""[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.") (quoting *Gardner v. Newsday, Inc.*

---

[28]   The confidentiality contracts mandated that "any materials or information provided in the course of placement of this reinsurance or inspection . . . shall be kept confidential" by Excalibur. Doc. 29-1, p. 25 (Article 30). In the second confidentiality agreement, Excalibur explicitly promised to maintain the confidentiality of "all data, reports, interpretations, forecasts, agreements and records and all other information" made available to it in connection with the review of Travelers' records. Doc. 80-3, p. 3.

(*In re Newsday, Inc.*), 895 F.2d 74, 79-80 (2d Cir.)) ; *In re Savitt/Adler Litigation,* 1997 WL 797511, at *3 (non-parties' privacy interests comprise "strong factor weighing against disclosure of their identities"); *Crossman*, 714 F.Supp. 2d at 287 ("there can be (and often are) considerations of personal privacy, public safety, or a business's proprietary information, such as trade secrets or confidential research, that can trump the right of the public to access court records"); *United States v. Ferguson*, No. 3:06CR137 (CFD), 2008 WL 113654, at *1 (D.Conn. Jan. 5, 2008) (granting motions to seal documents "on the ground that the accompanying documents contain detailed, confidential business information" that was unrelated to legal issues in the case, and "because the disclosure of this confidential information would cause undue harm to the businesses involved").

Furthermore, the fact that the broker's name may have appeared in the press in relation to a reinsurance spiral  does not necessarily negate the broker's  right to privacy as to the specifics of its settlement negotiations with its clients.   Granted, a protective order is designed to protect information that is *not* publically available.  *See, e.g, Drape v. UPS, Inc.*, No. 12–2172 KHV/DJW, 2012 WL 4933319, at *6 (D.Kan. Oct. 16, 2012).   Difficulties, however, arise when publicly available information is related to preserved confidential information, as in the present case.   Here the broker was involved in a business matter covered by the press, but in such a case, the Court may look at the intentions of the parties to preserve particular  information as confidential (*e.g.*, the substance of settlement negotiations). *See, e.g.*,  *United States v. Mahaffy*, 693 F.3d 113, (2d Cir. 2012)("a business's information may be confidential if the business exclusively possesses the information and considers it to be, and treats it as, confidential") (citing *Carpenter v.  United States*, 484 U.S. 19, 26-27 (1987)).   Courts also favor redactions of personal identifiers – as implemented by Travelers –  rather than designations of entire documents.

34

Travelers represents that the terms of its settlement with the broker require[d] that Travelers keep all matters relating to the negotiation of the settlement confidential." Doc. 104, p. 6. The broker thus actively attempted to shield the substance of its settlement negotiations from public access.

Absent additional evidence, the Court lacks sufficient information to make a final determination as to what, if any, information relating to the broker in the "Confidential Discovery Material" has actually been made available to the public.  For example, although press articles may include the name of the broker with respect to the spiral claims, those articles may also identify other brokers involved in the same crises.  Therefore, the articles may not, on their own, identify this particular broker as the one discussed in the present litigation.  In addition, the alleged articles likely do not include the underlying confidential discussions that occurred prior to the broker's settlement with Travelers and/or its other claimants.

Similarly, the broker's annual report, although distributed to the broker's investors, may not divulge all of the pertinent facts underlying settlement (*e.g.*, the broker's settlement discussions and private communications with Travelers and other claimants).  Such a report, by its very design, details *outcomes* – final settlement agreements and the existence of lawsuits – as opposed to private discussions, factual investigations, and analyses leading to such resolutions.   The broker's privacy as to the types of materials Travelers seeks to protect is not therefore obliterated by the publication of its name by the press nor by the issuance of its annual report to investors.

At this time, the Court  cannot find that all information with respect to the broker in Travelers' designated confidential materials has in fact been "revealed to the public."[29] In the absence

---

[29]  Taken to its logical conclusion, Excalibur's arguments would suggest that no company that had ever had its dealings covered in the press or had ever released an annual report to its investors could maintain privacy in its sensitive business information or settlement discussions.

of any demonstration by Excalibur of a need to reveal the broker's identity, or to delve into the specifics of the broker's settlement negotiations, the designated materials fall within the terms of the SPO.[30] These materials include "confidential, commercial, proprietary business information or non-public financial data." Doc. 24-1, p.   As Travelers suggests, to facilitate settlement negotiations, cedants must be allowed to "share confidential materials without fear that the information will end up in the public domain." Doc. 80-1, p. 12. It follows that the settlement negotiations should also be shielded.[31]  See, e.g., Palmieri, 779 F.2d at 865.

Surprisingly, Excalibur also objects to Travelers' designations because they pertain to certain *entire* documents.   Excalibur states  that "Travelers improperly designated *every page* of every attachment as confidential." Doc. 98, p. 5 (emphasis added).[32]   Yet, conversely, with respect to

---

Also, as Travelers points out, "Excalibur cannot credibly maintain that it may designate six entire deposition transcripts as 'Confidential' irrespective of their contents while at the same time contending that information in the public domain does not qualify as 'Confidential' under the SPO." Doc. 104, p. 5 n.5.

[30]  At this time, Excalibur  has made no showing that revelation of the  broker's  sensitive business information and/or settlement negotiations is  relevant and necessary for Excalibur to prepare its case for trial.  Excalibur has demonstrated no resulting unfairness from maintaining the broker's confidentiality.

[31]  As to  the  insurance  policy  and  placement  materials  issued  by other insurers to the broker, such materials contain third-party commercial and proprietary business information that need not be disclosed.  These confidential materials clearly relate to non-parties whose privacy need not be pierced for this action to proceed.

[32]  Travelers clarified  that  Excalibur  incorrectly accused Travelers of designating every page of documents at issue:

Excalibur claims that Travelers designated "every page" of a 185-page document. . . as confidential. In reality, Travelers only designated portions of this document as confidential – a fact that Travelers plainly indicated in its Motion.  Excalibur also

Travelers' designation of *particular passages* of documents as confidential, Excalibur complains that "[i]f Travelers had chosen to designate the entire transcript as confidential, Excalibur would have accepted such designation;" but because Travelers has made  "a line by line designation, the confidentiality of those designations must be supportable." *Id.*, p. 6-7.  Taken in totality, such inconsistent arguments are less than persuasive, especially when  viewed in relation to  Excalibur's prior motion to designate entire deposition transcripts, Doc. 74, as discussed *supra*.

Ultimately, Excalibur withdraws its objections to Travelers' designation of excerpts of the Robles deposition transcript, choosing instead to preserve only its objection to "the blanket designation of "any reference to the Broker's name or the name of the underlying claimants." Doc. 98, p. 7-8.  This objection, however, directly contradicts one of the bases upon which Excalibur itself has suggested that six deposition transcripts should be considered "confidential" – the identity of the broker.  *See* Doc. 74-10, p. 5 (Excalibur has "a good faith basis for designating each of the depositions as confidential as each 'includes personal information, or confidential, commercial, proprietary business information or non-public financial data," including the very "identity of the Broker in each of the depositions.").[33]

In sum, the remaining controversy over the identity of the broker seems more an arguing

claims that "Travelers improperly designated every page of every attachment as confidential," but fails to cite a single document in support of this bald assertion. *See* Opp. at 5.  Had  Excalibur bothered to review the documents subject to Travelers' Motion, it would have discovered that attachments to many of those documents were not designated confidential.

Doc. 104, p. 3.

[33]   It would seem that, as  Travelers  contends, "the appearance of the broker's name in Excalibur's documents makes those documents confidential, but its appearance in Travelers' documents does not." Doc. 104, p. 6.

point between the parties than a pressing concern of Excalibur to reveal the broker's identity. Excalibur has offered no compelling reason to override the privacy interest of the broker in its settlement negotiations with Travelers and other claimants.  Excalibur obviously knows the broker's identity so the information has only been shielded from the public during discovery.  There is no apparent prejudice to Excalibur from protecting the privacy of the non-party broker in the designated discovery materials. *See, e.g., John Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986) ("Since discovery is had for the purposes of preparing for trial, a court may issue an order to protect potentially embarrassing information about third parties from being released before it is deemed necessary for use at trial.") (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35 (1984)).

Finally, perhaps in an effort to argue waiver, Excalibur criticizes Travelers for its lack consistency in its treatment of the documents at issue, first designating them as "confidential" and then producing them "without designating them as confidential." Doc. 98, p. 6.  Travelers contends that such disclosures were inadvertent. Excalibur insists that such inconsistency has been by "deliberate decision," *id.*, despite Travelers' notice of inadvertent omissions to Excalibur, including by letter, Doc. 104, p.7.[34]  Although charging both parties to make their "confidential" designations consistently, the Court accepts Travelers' representation that, in the process of producing many

---

[34]  Travelers' counsel, Mitchell R. Harris, included in his Declaration:

By letter dated March 12, 2012, Travelers designated a number of documents it produced to Excalibur through discovery as "Confidential Discovery Material" under the parties' Stipulated Protective Order (ECF No. 24).  To denote these designations, Travelers affixed a "Confidential" stamp to the bottom of each document and advised that it was designating 'each and every copy of that document as 'Confidential Discovery Material'; *if any such copy lacks a 'Confidential' stamp, the omission is inadvertent and the copy should be accorded confidential treatment*."

Doc. 80-2 (Harris Declaration), at ¶ 3 (emphasis added).

documents, it inadvertently failed to stamp all designated pages as "confidential."

Based on the foregoing analysis, the Court will uphold Travelers' designated passages of documents and the Robles deposition transcript as "confidential" over Excalibur's objections. The motion [Doc. 80] will be granted.

## IV.   CONCLUSION

For all of the foregoing reason, the Court hereby GRANTS the following eight motions to seal:  Doc. 45 (Travelers' Motion to Seal Portions of Excalibur's Motion to Compel [Doc. 42 & 43] and supporting exhibits [Doc. 44]); Doc. 52 (Travelers' Motion to Seal Portions of Exhibit 1 to Travelers' Opposition to Excalibur's Motion to Compel [Doc. 51-1]);  Doc. 58 (Excalibur's Motion to Seal Exhibits 1, 3, 4, & 7 to Declaration of Angela Aloisio); Doc. 61 (Travelers' Motion to Seal Exhibits 1, 3, 4 & 7 to Declaration of Angela Aloisio); Doc. 77 (Travelers' Motion to Seal Portions of Excalibur's Memorandum in Support of its Motion to Compel [Doc. 75] and exhibits attached to Declaration of Raymond S. Mastrangelo); Doc. 84 (Travelers' Motion to Seal Unredacted Memorandum of Law in Support of Motion for Pre-Pleading Security and Exhibit 1 to that Memorandum, an excerpt from Diane Ferro's deposition); Doc. 91 (Travelers' Motion to Seal Unredacted Memorandum of Law in Opposition to Excalibur's Motion to Designate Discovery Material as Confidential and Exhibits 1 & 2 to that Memorandum); and Doc. 101 (Travelers' Motion to Seal Portions of February 26, 2013 Hearing Transcript).

In addition, the Court upholds the "confidential" designation of discovery materials in:  Doc. 74 ( Excalibur's motion to designate as "confidential" the deposition transcripts of six witnesses: Carol Barnhardt, Steve Ranalli, Ann Brandt, Kathy Barker, Diane Ferro, and Angela Aloisio) and

Doc. 80 (Travelers' motion to designate as confidential certain discovery materials, including documents and deposition excerpts of the testimony of Rosemarie Robles).  These two motions are GRANTED.

Lastly, having upheld Excalibur's designation of six deposition transcripts as "confidential," the Court reminds Excalibur that it has neither filed a motion to seal nor a memorandum in support of sealing the deposition transcript excerpts that Travelers has filed with the Court [Doc. 84 & 90]. The Court herein has *provisionally* sealed the excerpts based on Excalibur's designation of them as "confidential."  However, unless Excalibur files and serves its own motion to seal and supporting memorandum by **August 27, 2013**, the excerpts will be unsealed.  Excalibur is reminded that "compelling reasons" are required for sealing and redaction is favored as the  appropriate means of tailoring such a sealing request.  D. Conn. L. Civ. R. 5(e)(3).

It is SO ORDERED.

Dated: New Haven, Connecticut
         August 5, 2013


         */s/Charles S. Haight, Jr.*
         CHARLES S. HAIGHT, JR.
         Senior United States District Judge