# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

THE TRAVELERS INDEMNITY
COMPANY as successor in interest to GULF
INSURANCE COMPANY,

          Plaintiff,

v.

EXCALIBUR REINSURANCE
CORPORATION f/k/a CAPITAL
INSURANCE COMPANY,

          Defendant.

3:11 - CV- 1209 (CSH)

MARCH 11, 2014

## RULINGS ON PLAINTIFF'S MOTIONS FOR PREJUDGMENT REMEDY; FOR PRE-PLEADING SECURITY; AND TO STRIKE DEFENDANT'S ANSWER

**HAIGHT, Senior District Judge:**

In this diversity action between two insurance companies on policies of reinsurance, Plaintiff, the Travelers Indemnity Company (hereinafter "Travelers"), is the primary insurer and Defendant, Excalibur Reinsurance Corporation (hereinafter "Excalibur"), is the reinsurer. Travelers alleges that Excalibur has failed to pay amounts owing to Travelers under treaties of reinsurance between the parties, in breach of those contracts. Excalibur denies liability.

Familiarity is assumed with the Court's prior rulings and orders in this strenuously litigated case. The case is before the Court on two motions by Travelers: (1) to compel Excalibur to post pre-pleading security pursuant to Conn. Gen. Stat. § 38a-27(a) [Doc. 81]; and (2) to strike Excalibur's answer to Travelers' amended complaint, Excalibur having failed to post the pre-pleading

1

security Travelers says is mandated by the statute [Doc. 106].   Excalibur opposes both motions. This Ruling decides them.

## I.   <u>INTRODUCTION</u>

Earlier in the case, Travelers moved for a prejudgment remedy against Excalibur pursuant to Conn. Gen. Stat. § 52-278d [Doc. 26].  Excalibur resisted that motion.  Litigation skirmishes on other fronts broke out, and the prejudgment remedy motion was still pending when the swift-moving events occurred, which give rise to the present motions.

When Travelers commenced this action, Excalibur was authorized by the relevant state agency to do business in Connecticut.  A time came when Excalibur cancelled that authorization. The record does not reveal its reasons for doing so.  Presumably, responsible company officers thought the step was in Excalibur's best interests.  Actions have consequences.  One consequence of Excalibur's morphing into an unauthorized insurer in Connecticut was to enable Travelers to bring the present motion to require Excalibur to post pre-pleading security.

Excalibur's concern was prescient.  Events moved apace.  On February 1, 2013, the Court filed a ruling [Doc. 73] which granted Travelers' motion for leave to amend its complaint.  Excalibur had opposed that motion on substantive grounds that failed to persuade the Court.  In addition, Excalibur accused Travelers of engaging in what one may call improper litigation gamesmanship. In the ruling, I noted at 13: "Excalibur complains that 'Travelers seeks leave to amend its complaint solely to compel Excalibur to file a pleading to trigger the Pre-Answer Security Statute.'"  I also rejected that alternative basis for denying Travelers' leave to amend its complaint, reasoning that if the governing law entitled Travelers to amend (and it did), the consequences of its doing so under

any applicable Connecticut statute must take their course.  In that regard, it seemed fair to observe that the possibility of Travelers' invocation of the pre-pleading security statute existed only because Excalibur, for undisclosed reasons and seemingly not under compulsion, cancelled its authorization to do business in the state.  That change in status enabled Travelers to invoke Conn. Gen. Stat. § 38a-27(a), which requires "any unauthorized person or insurer" to post security before filing "any pleading in any court action or proceeding."

On February 15, 2013,  Travelers filed a motion for an order compelling Excalibur to post pre-pleading security [Doc. 81].  Excalibur opposes that motion.  On the same day, Travelers filed its amended complaint [Doc. 85].  While that motion was pending, Excalibur filed an answer and affirmative defenses to the amended complaint [Doc. 96].   Travelers filed a motion to strike Excalibur's answer because Excalibur had not posted pre-pleading security [Doc. 106].  These are the motions that this Ruling principally addresses.  Plaintiff's earlier motion [Doc. 26] for a prejudgment remedy under a different statute still pends, but has been overtaken by events.  Counsel for Travelers indicate in their submissions that if the Court orders Excalibur to post pre-pleading security, that will moot Travelers' motion for a prejudgment remedy.

## II.  DISCUSSION

### A.   Connecticut's Pre-pleading Security Statute

Conn. Gen. Stat. § 38a-27(a) provides:

> Before any unauthorized person or insurer files or causes to be filed any pleading in any court action or proceeding . . . instituted against the person or insurer . . . the person or insurer shall either (1) Deposit  with the clerk of the court in which the action or proceeding is pending . . . cash or securities . . . in an amount to be fixed by the court . . . sufficient to secure the payment of any final judgment which may be rendered in the action or proceeding . . . ; or (2) procure proper authorization to do

3

an insurance business in this state.

The purpose of this Act, known as the "Pre-Pleading Security Statute," was described in *Hartford Accident & Indem. Co. v. ACE Am Reins. Co.*, No. X02CV030178122S, 2008 WL 4635451, at *2 (Conn. Super. Ct. Sept. 19, 2008):

> The Security Statute is intended to ensure that any insurer, domestic or foreign, selling insurance or reinsurance to a person in [Connecticut] . . . will have sufficient assets in this state to satisfy any judgment. It is a regulatory requirement targeting a specific subset of insurance companies that do not maintain adequate reserves and surplus in this state to satisfy licensure requirements and are alleged by a policyholder to have defaulted on their obligations under the terms of a policy.

Pre-pleading security is a mandatory statutory requirement. *See Hartford Accident & Indem. Co. v. ACE Am. Reins. Co.*, 279 Conn. 220, 234 n.11 (2006). Once a plaintiff demonstrates the applicability of Conn. Gen. Stat. § 38a-27(a), the court has no discretion, but is "required to order that the defendant[], before being permitted to defend the plaintiff's action, either obtain proper authorization from the insurance commissioner to conduct business in this state or provide security in an amount sufficient to satisfy a judgment against them." *Id.* The consequence of a defendant's failure to post pre-pleading security is a judicial order precluding the defendant from filing any pleadings, or if one has been filed (such as an answer), striking the pleading.

Given the mandatory language of the Security Statute, it is not surprising that federal and state courts in Connecticut routinely apply its terms to reinsurers such as Excalibur. *See, e.g., Arrowood Surplus Lines Ins. Co. v. Gettysburg Nat'l Indem. Co.,* No. 3:09-cv-00972, 2010 WL 1416747, at *1 (D. Conn. Apr. 6, 2010) (suit on a policy of reinsurance) ("Under Connecticut law, before an 'unauthorized insurer' can file a pleading in a case against it, it must either post a pre-pleading security, procure the proper authorization to do business in Connecticut, or seek an order

from the court dispensing with the pre-pleading security requirement."). *See also Hartford Accident & Indem. Co. v. ACE Am. Reins. Co.,* 103 Conn. App. 319, 327 n.6 (2007); *Sec. Ins. Co. of Hartford v. Universal Reins. Co. Ltd*., No. 3:06CV158, 2007 WL 214606, at *2 (D. Conn. Jan. 26, 2007).

 In the case at bar, the parties do not dispute that the statute applies to reinsurers or that Excalibur is a reinsurer.  However, Excalibur contends at the outset that because it was authorized in Connecticut at the time it entered into the treaty of reinsurance in suit, and that contract was not "issued and delivered " in Connecticut, it is not subject to Connecticut's pre-pleading security statute. Doc. 99, p. 19-21.

 I do not agree.  *Morgan v. American Risk Management., Inc.,*  cited by Excalibur as support for its contention, differs from the present case.  *See Morgan*, No. 89 CIV 2999(JSM)(KAR), 1990 WL 106837, at *7 (S.D.N.Y. July 20, 1990).  In *Morgan*, the issue was whether the *security-seeking plaintiff* had to be licensed in New York to invoke New York's equivalent statute against an unauthorized reinsurer.  *Id.*  As the Connecticut Appellate Court has noted, the pre-pleading security statute is designed to prevent insurance policyholders from having to "resort[] to distant forums for the purpose of asserting legal rights" under their policies.  *Hartford Accident & Indem. Co.,* 103 Conn. App. at 329.  It would be contrary to the intent of the law and public policy to allow unauthorized insurers to claim that they are not subject to pre-pleading security obligations, because at some point prior to litigation they were authorized in Connecticut.  In fact, as the Second Circuit said with respect to New York's analogous statute, "it makes little sense for the legislature to protect residents by subjecting alien reinsurers to the jurisdiction of the New York courts, but not to the security requirements." *British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.*, 212 F.3d 138, 141 (2d Cir. 2000) (internal citation omitted).  Lastly, neither the language of the statute nor the cases

5

construing it suggest that the insurance contract in suit must have been "issued and delivered" in Connecticut in order to subject an unauthorized insurer to the requirements of the Security Statute.

In short, it is established that Excalibur is an "unauthorized insurer" under Conn. Gen. Stat. § 38a-27(a).  It remains to consider whether this state's pre-pleading security statute applies in this federal diversity action.  That issue gives rise to two related but separate questions: the effect of Federal Rule 64 of Civil Procedure; and choice-of-law principles implicated by the *Erie* doctrine (first articulated in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  I deal with those questions in order.

### B.   Rule 64

Travelers urges the Court to apply the Connecticut pre-pleading statute under a plain reading of Federal Rule 64(a) of Civil Procedure, which provides in its entirety: "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies."

Excalibur resists a direct application of Rule 64(a).  It contends that either the parties' contractual choice of New York law, or a choice-of-law analysis under *Erie,* leads to the conclusion that New York law governs.  Excalibur argues that since it is licensed and authorized to do business in New York, and thus is in full compliance with New York's pre-pleading security statute, N.Y. Ins. Law § 1213, Excalibur is not subject to Connecticut's pre-pleading security statute.

A threshold question arises as to whether the phrase "under the law of the state where the court is located," as used in Rule 64, includes state choice-of-law principles.

6

Travelers answers that question in the negative.  It stresses that Rule 64 entitles it to every remedy for pre-judgment available "under the law of the state where the court is located," *i.e.* Connecticut, rather than under "the law the forum state's court would apply under their choice of law principles."  Doc. 112, at 4.  It follows, Travelers concludes, that the plain language of Rule 64 renders the Connecticut pre-pleading security statute applicable to this case, so that there is neither occasion nor need for this Court to consider whether the statute is "procedural" or "substantive," the benchmarks of choice-of-law analysis.  Travelers argues: "[t]he plain language of Rule 64 renders the forum state's statutory remedies available, irrespective of their procedural or substantive character."  *Id.,* at 5.

Such a semantic argument does not exclude the conceptual possibility that "the law of the state where the court is located" includes that state's choice-of-law-rules.  After all, the Second Circuit routinely instructs district judges in diversity cases to apply the law of the state in which they sit, *including* that state's choice-of-law principles.  However, the case at bar presents a special situation.  Rule 64 speaks in the broadest possible terms: it makes available to a party "every remedy" available under forum state law "to secure satisfaction of [a] potential judgment." Fed. R. Civ. P. 64(a).  The Connecticut Legislature enacted one of several such remedies in the pre-pleading security statute.  On its face, that statute applies to the case at bar, Excalibur being an insurance company unauthorized to do business in Connecticut and defending against a claim for money damages arising out of an alleged breach of reinsurance contracts.  Excalibur has the burden of persuading the Court that the *prima facie* applicability of this remedial statute to the case at bar is trumped by the choice-of-law provision in the reinsurance treaties.

7

There is a paucity of case law on this particular question.  The briefs of counsel do not cite, and the Court's research to date has failed to discover, a Connecticut or federal appellate court decision which raises, let alone resolves, the interaction between Federal Rule 64 of Civil Procedure, the Connecticut pre-pleading security statute and prejudgment remedy statute, and choice-of-law principles.  Such guidance as exists is found in decisions of trial judges in this District and in Connecticut.

In approaching that question, I note that Rule 64(b), captioned "Specific Kinds of Remedies," refers to a number of remedies, including "attachment," "garnishment," and "sequestration," and concludes with a catch-all inclusion of  "other corresponding or equivalent remedies."  Fed. R. Civ. P. 64(b).  The Second Circuit has held that a comparable New York pre-pleading security statute "is the functional equivalent of an attachment." *British Int'l,* 212 F.3d at 141, *accord Stephens v. Nat'l Distillers  & Chem. Corp.,* 69 F.3d 1226, 1229 (2d Cir. 1995) ("[t]here is . . . no significant distinction between New York's [pre-pleading] security requirement and an attachment of property.").  Thus, it is clear enough that Connecticut's pre-pleading statute is a "remedy," as that word is used in Rule 64(a).

In *Bahrain Telecommunications Co. v. Discoverytel, Inc.*, 476 F. Supp. 2d 176 (D. Conn. 2007),  Judge Kravitz held that Rule 64 enabled the plaintiff to invoke a Connecticut statute providing for an attachment in aid of an international arbitration.  He stated generally: "Rule 64 thus authorizes a federal court to borrow relevant state law on provisional remedies."  476 F. Supp. 2d at 183.  Judge Kravitz did not think it necessary to consider choice-of-law issues.

There  is significant authority within the Second Circuit supporting a "plain reading"

application of Rule 64, namely, that Connecticut's pre-pleading statute is incorporated by reference into Federal Rule 64, based on the statute's status and function as a remedy for seizure of person or property to satisfy potential judgment available under the forum state's law.  In *Sprague Energy Corp. v. Levco Tech Inc.,* No. 3:09-cv-29, 2009 WL 1374593, at *7-8 (D. Conn. May 11, 2009), a diversity action, Magistrate Judge Martinez considered the plaintiff's motion for a prejudgment remedy pursuant to a Connecticut statutory remedy akin to attachment, which plaintiff invoked pursuant to Rule 64.  The action arose out of a contract between plaintiff, a wholesale supplier of petroleum products, and defendants, a home heating oil distributor in Stamford, Connecticut, and individuals who guaranteed its performance.  Defendants breached the contract by refusing to pay for amounts of oil specified in the contract.  Plaintiff moved for a prejudgment remedy in excess of $7 million.

Judge Martinez granted the motion after an evidentiary hearing.  At the outset, she dealt with a choice-of-law issue.  The contract provided: "[t]his Agreement and any Sales Confirmation shall be governed by and interpreted in accordance with the laws of the State of New Hampshire."  2009 WL 1374593, at *7 n.15. The parties "disagree[d] . . . as to which state's prejudgment remedy standard should be applied."  *Id.,* at *7.  Plaintiff argued that Rule 64 made the Connecticut prejudgment remedy available.  In contrast, Defendants argued that "the court should apply New Hampshire's prejudgment remedy statute, which requires a higher showing than Connecticut's statute," because "a Connecticut court, applying Connecticut's choice of law rules, would apply New Hampshire's prejudgment remedy statute, and therefore this court must do the same."  *Id.*

Confronted by these conflicting perceptions, Judge Martinez observed in a footnote that

9

"defendants do not cite any appellate law from Connecticut in support of this choice of law argument," and further stated:

> There is a dearth of authority on this issue, but the plain language of Rule 64 does not support the defendants' reading. The rule refers solely to remedies available under the law of the forum state. The defendants have not cited any cases from this circuit in support of their contention. The plaintiff, by contrast, cites several cases in this district which, while not addressing the issue directly, apply the forum state's prejudgment remedy statute despite the obvious applicability of a contractual choice of law provision to the parties' substantive claims.
>
>   The plain language of the rule, as well as the lack of authority supporting the defendants' view, leads the court to conclude that Connecticut's prejudgment remedy statute governs pursuant to Fed. R. Civ. P. 64.

*Id.,* at *7 and n.16 (citations and other footnote omitted).

In *Bergesen d.y. A/S  v. Lindholm*, 760 F. Supp. 976, 984 (D. Conn. 1991), the court cited Rule 64 and maritime law, without choice-of-law analysis, in applying Connecticut's prejudgment remedy statute to a dispute arising out of a charter party governed by English law.  Likewise, *Darrah-Wantz v. Brown,* 138 F.R.D.  20,  22 (D. Conn. 1991), applied Connecticut's prejudgment attachment statute to an interstate contract dispute, merely citing to Rule 64 and Local Rule 5(c).

If this Court interprets Rule 64's reference to "the law of the state where the court is located" as limited to state statutes directly providing for some sort of prejudgment remedy (attachment or pre-pleading security), I agree with the cited cases and others that the plain language of Rule 64 incorporates by reference all remedies available under the law of the forum state that provide for seizure of a person or property to secure the satisfaction of a potential judgment in a federal action. Connecticut's pre-pleading security statute clearly falls within the ambit of the Rule.  Rule 64 is short, terse, and to the point.   Its text neither mandates nor precludes consideration of state choice-

of-law rules when a federal district judge is asked, pursuant to Rule 64, to apply a "law of the state" remedy such as the one at bar.  Under the explicit wording of the Rule, a question of applicability arises only if a federal statute precludes or limits state remedies.  Rule 64(a) thus concludes with the cautionary note: "But a federal statute governs to the extent it applies."  In the case at bar, the Court is unaware of any federal statute that would limit the application of Connecticut's pre-pleading security statute, and the parties do not cite any.

### C.  Erie Doctrine

If, contrary to the reasoning or results in the cited cases, the phrase "under the law of the state where the court is located," as used in Rule 64(a), includes the state's choice-of-law rules, then this Court should utilize a different analytical approach, involving a determination of whether Connecticut's pre-pleading statute, Conn. Gen. Stat. § 38a-27(a), is procedural or substantive. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.* 549 F.3d 137, 141–142 (2d Cir. 2008) (citations and internal quotation marks omitted).

When a federal district court, sitting in diversity, is asked to apply a state's pre-pleading security statute, the court may consider whether it must first conduct an *Erie* doctrine substantive/procedural analysis?  Judge Hall appears to think so.   In *Arrowood Surplus Lines Ins. Co. v. Gettysburg Nat'l Indem. Co.,* No. 3:09-cv-972, 2010 U.S. Dist. LEXIS 34498 (D. Conn. Feb. 19, 2010), she said at *4: "Connecticut's pre-pleading security requirement applies in federal diversity actions, pursuant to the principles articulated in *Erie R. Co. v. Tompkins.*"  Judge Hall did not engage in a substantive/procedural analysis before applying (as she did) the state's pre-pleading

security statute to a diversity action on a reinsurance contract.  She cited two cases for the just-quoted proposition: Judge Eginton's opinion in *Security Insurance*, 2007 WL 214606, and the Second Circuit's opinion in *British International,* 212 F.3d 138.  Each of these cases applies a forum state's pre-pleading security statute; neither cites *Erie* or performs a substantive/procedural analysis.

Counsel for Travelers appear to be correct when they state in their brief [Doc. 112] at 4 that "the lone case in this district to hold that the plain language of Rule 64 does not dispose of the question" is Judge Underhill's opinion in *Wachovia Bank, N.A. v. Cummings,* No. 3:09-cv-957, 2010 WL 466160 (D. Conn. Feb. 8, 2010).  *Wachovia* was a diversity action brought by the plaintiff bank against the guarantors of a large loan on real property in New York.  Plaintiff sought a prejudgment remedy under the Connecticut statute.  The guaranty agreement contained a New York choice-of-law provision, which the defendants contended would preclude the application of the Connecticut statute.  The defendants also claimed that Connecticut's prejudgment remedy statute was inapplicable, because the District Court of Connecticut was sitting in diversity, and thus required to apply Connecticut's choice-of-law rules.  These are precisely the same arguments made by Excalibur.  Excalibur objects to the application of Connecticut's pre-pleading security statute on the ground that the substantive nature of such statutes required application of the New York statute instead of that of Connecticut (the forum state).  Doc. 99, at 8–10.

Judge Underhill's approach in *Wachovia* differed from that of the district judges in the cases cited *supra*, in that he cited *Erie* and performed an *Erie-* doctrine substantive/procedural analysis before deciding whether or not to apply the Connecticut statute – whereas the other judges applied the statute by the less complicated means of following the plain language of Rule 64(a).  Judge

Underhill began his analysis by saying: "[i]t is undisputed that, under the *Erie* doctrine, a federal court sitting in diversity applies federal procedural law and the substantive law of the forum state, including conflict-of-law rules." 2010 WL 466160, at *4.  After a comprehensive discussion, which I need not replicate, Judge Underhill held that none of the defendants' contentions "necessitates a conclusion that the Connecticut PJR is substantive for choice-of-law purposes." *Id.,* at *5.  On the contrary, he concluded that "under Connecticut law, a PJR is a procedural mechanism," so that "a Connecticut court applying Connecticut choice-of-law rules would apply the Connecticut prejudgment remedy in this case.  Accordingly, I will do so, too." *Id.*, at *5, *7.  Judge Underhill concluded in *Wachovia* that the Connecticut prejudgment remedy statute applied to the diversity case before him.

While both Judge Underhill in *Wachovia* and Judge Martinez in *Sprague* held that a Connecticut statutory prejudgment remedy applied to a diversity case, the bases for their holdings differ.  Judge Martinez applied the Connecticut statute because she reasoned that Rule 64 required her to do so.  *Sprague Energy Corp.*, 2009 WL 1374593 at *7.  Judge Underhill stated: "[n]either Rule 64 nor Local Rule 4(c) answers the question whether a state remedy, such as attachment, is available in this Court." *Wachovia*, 2010 WL 466160 at *4.  He went on to say:

> Both rules beg the question. The Rules direct the court to determine what remedies are available in the state court and to make them likewise available in federal court. A determination of what remedies are available in Connecticut requires the application of Connecticut choice-of-law principles.

*Id.*

Since the prejudgment remedy  is procedural under Connecticut law, and not substantive, the *Erie* doctrine allowed the plaintiff in *Wachovia* to invoke the federal procedural machinery

found in Rule 64(a).  Plaintiff in the case at bar is similarly entitled.

The careful reader will have noted that the courts reached the same conclusion with respect to the applicability of the Connecticut pre-pleading security statute to the case in question, whether the rationale be founded upon the plain language of Rule 64 (*Sprague*) or a more elaborate *Erie* doctrine analysis (*Wachovia*).   Since the result is the same, I need not choose between these two approaches, choosing one and rejecting the other.  But I do hold, in agreement with  Judge Underhill, that the Connecticut prejudgment statutes are procedural, not substantive.  His analysis at 2010 WL 466160, at *4-7, is persuasive.  I would add to the cases he cited the words of Judge Eveleigh in *Hartford Accident*:  pre-pleading security proceedings are not designed "to resolve the dispute on the merits or predict the outcome of the case," but merely "to guarantee at the outset of a case, before litigation begins, that the unlicensed insurer has funds that are accessible in the event the plaintiff prevails at trial."  2008 WL 4635451 at *3.  This is the stuff of procedure, not of substance.

### D.  Other Considerations

While counsel for the parties have elaborately briefed the questions presented by these motions, the motions' resolutions are relatively simple.  Excalibur, for reasons it presumably considered sufficient, chose during an early stage of this litigation to withdraw its authorization by the State of Connecticut to do business as an insurer within the state.  That action had the foreseeable consequence of making Excalibur subject to the provisions of Connecticut's pre-pleading security statute.  In order to hold that the statute does not apply to Travelers' diversity action against Excalibur, the Court would have to disregard the plain wording and manifest intent

14

(grounded in public policy) of both a state statute and the federal procedural rule making that

statute's remedies available to a plaintiff in Travelers' position.  I decline to do so.[1]

Excalibur professes to find support for its choice-of-law contention in *Stephens v. National

Distillers & Chemical Corp.,* 69 F.3d 1226, 1229 (2d Cir. 1995).  In *Stephens,* the Second Circuit

held  that the Foreign Sovereign Immunities Act precluded the application of a state statute

requiring an unauthorized foreign insurer to deposit security prior to filing its answer.  In a footnote,

the Court of Appeals  observed: "[t]he District Court found that Kentucky's law pertaining to the

posting of security, rather than New York's law, was applicable in this action."  69 F.3d at 1228 n.3.

The Second Circuit affirmed District Judge Martin's ruling in the case.  Excalibur seizes upon that

quoted observation, construes it as a ruling by the Second Circuit on a choice-of-law issue, and

analogizes that supposed ruling in *Stephens* to the case at bar by casting Connecticut in the role of

New York as the forum state, and New York in the role of Kentucky as the other state whose

---

[1]       Excalibur calls to my attention the fact that in a pending case in this District before
Judge Chatigny involving the same reinsurance contracts and parties, counsel for Travelers argued
in a brief that pre-pleading security statutes "are 'substantive' for *Erie* purposes and apply to
diversity actions in federal court."  In the case at bar, counsel for Excalibur profess outrage at
Travelers' omission from its present brief of any assertion that the Connecticut pre-pleading security
statute is substantive law.  Excalibur argues in its brief [Doc. 99] at 2 that "pre-pleading statutes *are*
substantive law," and Travelers' cannot rely upon Rule 64 because "Rule 64 applies only to
procedural, not substantive rules of law."  (emphasis added).  To the extent that discrepancies exist
between Travelers' brief in the case before Judge Chatigny and this one before me, they are more
entertaining than probative or persuasive.  Judge Chatigny's case is his.  This one is mine.  It would
be a matter of indifference to me if Travelers had tried to persuade Judge Chatigny that the
applicability of the pre-pleading security statute to his case was mandated by the Twenty-Third
Psalm or the Gettysburg Address.  Travelers is trying to persuade me that this state's pre-pleading
security statute is made applicable to this federal diversity action by the Federal Rule 64 of Civil
Procedure. That proposition is either correct or it is not.  The question is one of law, not fact.  I
resolve it in Travelers' favor for the reasons stated in text.

Security Statute was held to apply.  The analogy breaks down because the plaintiff in *Stephens* filed his action *in Kentucky*; venue was subsequently transferred to the Southern District of New York pursuant to 28 U.S.C.§ 1404(a).  For choice-of-law purposes, Kentucky was the forum state, just as Connecticut is in the case at bar.  Excalibur derives no discernible benefit from the *Stephens* court's conclusions that the Kentucky's Security Statute applied to that case.

Judicial resolution of the issues presented by these motions does not require an exercise of the trial judge's discretion.  The question is one of law: in this diversity case, does the Connecticut pre-pleading security statute, when read together with Rule 64, entitle Plaintiff Travelers to an order of the Court directing Defendant Excalibur to post the security called for by the statute?

For the reasons stated in this ruling, I conclude that the answer to that question must be "Yes."  In Connecticut General Statute § 38a-27(a), the Legislature fashioned a simple and straightforward remedy, designed to further the public good in the vast and frequently contentious world of insurance.  If an insurance company is sued in Connecticut, and it is not authorized to do business in the state, the company must, upon its adversary's demand, post pre-pleading security before the company is allowed to answer the complaint or continue in the litigation.  The statute contains no justification for a court to hold that an insurer, which was authorized when it was sued, may withdraw that authorization during the litigation, but be free of the pre-pleading security statute's requirements in respect of an unauthorized insurer.  I have not cited to any case supporting that proposition, which would be perverse and contrary to the state's public policy, as expressed in the statute.  The Connecticut courts have made it clear that if the circumstances of the case bring it within the pre-pleading security statute, a trial judge *must* enforce that remedy.  The statute is a

16

declaration of public policy, and a federal trial judge in a diversity case is bound to respect it.  The terse but broadly fashioned Rule 64 of the Federal Rules of Civil Procedure entitles a plaintiff to the benefit of "every remedy" that is available "under the law of the state where the court is located," including the state's pre-pleading Security Statute, *e.g.*, Conn. Gen. Stat. § 38a-27(a), for seizing a person or property to secure satisfaction of a potential  judgment.  The federal judge is in a position to implement the state's Security Statute remedy, because Rule 64 entitles a litigant against an unauthorized insurer to ask for such a remedy.

In the case at bar, I conclude that to deny Travelers the remedy it seeks from Excalibur, I would have to disregard the language and intent of both the Connecticut pre-pleading security statute and Federal Rule 64, which enables  Travelers to invoke that statute.  Such a ruling would be doubly unjustified.

For the foregoing reasons, the Connecticut pre-pleading security statute applies to this diversity action on policies of reinsurance.  Travelers is entitled to invoke that statute.  Excalibur is required to comply with the statute or suffer the consequences.

### E.  **Failure to Post Security**

The consequences of Excalibur's failure or refusal to post security under the statute, should that occur, are simple enough: the Court would strike Excalibur's answer and enter judgment in favor of Travelers.  Judge Hall summed up the position in *Arrowood*, 2010 U.S. Dist. LEXIS 34498, at *19:

> A hearing will be held to determine the amount of pre-pleading
> security that Gettysburg will be required to post, in order to proceed
> with the defense of this litigation.  If Gettysburg does not post that

17

amount within seven days of the court's ruling on the amount, its
Answer . . . will be stricken.

Also, in *British International Insurance Company Ltd*, 212 F.3d 138, 140, the Second Circuit,

confronted with a defendant's refusal to post pre-pleading security as mandated by a comparable New

York statute, noted:

> Because Seguros notified the District Court that it would not post a
> bond or other security, ACIC filed a motion to strike Seguros's
> answer, which the District Court granted after a hearing on personal
> jurisdiction . . . After a two-day hearing on damages, the District
> Court entered a default judgment against Seguros in the amount of
> $11,801,024.98.

The Second Circuit affirmed both rulings of the district court. *Id.,* at 144.

Excalibur contends that its posting of security, pursuant to a Connecticut statute, with this

District of Connecticut Court, would be inconsistent with, even violative of, a Pennsylvania

Department of Insurance order.  There is no substance to this contention.

As the result of circumstances which need not be recounted, the Pennsylvania Department

of Insurance issued an order on December 23, 2009 addressed to Excalibur which prohibits the

posting of "security deposits with any other jurisdiction without the Commissioner's prior written

approval except to the extent required by law."[2]  By its plain terms, the order permits Excalibur to

make such security deposits "to the extent required by law" in other jurisdictions.  Not only has the

order expressly carved out an exception for the statutes and rules of other jurisdictions, but also

---

[2]   Excalibur is a Pennsylvania corporation.

under the principle of comity and the limits of Pennsylvania's Department of Insurance's authority, Connecticut's pre-pleading security statute trumps an order from an out-of-state administrative agency.

## III.  **CONCLUSION**

For the foregoing reasons, the Court makes the following Order:

1.  Plaintiff's motion for a prejudgment remedy [Doc. 26] is DENIED AS MOOT.

2.  Plaintiff's motion to compel Defendant to post pre-pleading security [Doc. 81] is GRANTED, subject to the amount of the security, to be arrived at in the manner specified in this Order.

3.  Plaintiff's motion to strike Defendant's answer to the amended complaint [Doc. 106] is DENIED WITHOUT PREJUDICE to renewal, in the event that Defendant fails to post security in the amount specified by the Court following the proceedings described in Paragraphs 4 and 5 of this Order, *infra*.

4.  Counsel for the parties are directed to confer with each other in good faith, in an effort to agree upon the amount of security Defendant must post.  Such agreement by Defendant, if given, will be without prejudice to Defendant's right to appeal subsequently on the ground that this Order was improvidently or erroneously made.

5.  If the amount of security cannot be agreed upon by the parties, the Court will hold a hearing to determine the amount of pre-pleading security Excalibur will be required to post, in order to proceed with its defense of this litigation.  The hearing will take place on Wednesday, **March 19, 2014** at **10:30 a.m.** in the Courtroom on the 17th Floor of the Connecticut Financial Building, 157

19

Church Street, New Haven, Connecticut.  Should that hearing prove necessary, counsel are directed to submit letters summarizing the disputes between the parties and their contentions with respect to them.  Those submissions must reach Chambers not later than **March 17, 2014.**

6.  Since the continuation of this litigation is now dependent upon Excalibur posting security as directed in this Ruling, proceedings in the case are STAYED until the final implementation of that security.

It is SO ORDERED.

Dated:   New Haven, Connecticut
        March 11, 2014

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

20